The STATE of Texas

v.

Albert G. HILL, III, Appellee

NOS. PD-0019-15, PD-0020-15, PD-0021-15, & PD-0022-15

Court of Criminal Appeals of Texas.

DELIVERED: September 21, 2016

Charles "Chad" Baruch, Dallas, Lisa McMinn. State's Attorney, Austin, for the State.

George Rankin Milner III, Milner * Finn * Price, Dallas, L. T. "Butch" Bradt, Sugar Land, Michael Mowla, Cedar Hill, for Appellee.

## OPINION

RICHARDSON, J., delivered the opinion for a unanimous Court.

Appellee, Albert G. Hill III and his wife, Erin Hill, were indicted in 2011 for making false and misleading written statements to Omni American Bank when procuring a $500,000 home-equity loan in 2009. The Hills were charged under Texas Penal Code, Section 32.32(b) (Making a False Statement to Obtain Property or Credit),[1] and under Texas Penal Code, Section 32.46(a) (Securing Execution of a Document By Deception).[2] Within six months, the State dismissed the indictments against Erin Hill. Shortly thereafter, Albert Hill III (hereinafter referred to as "Hill") filed a motion to quash and dismiss his indictments. The trial court held an evidentiary hearing and granted Hill's motion to dismiss with prejudice.

The State appealed the trial court's order dismissing the indictments against Hill. The Fifth Court of Appeals sustained the State's first two points of error and reversed the dismissals, holding that the trial court judge "erred in conducting a hearing on Hill's motion to dismiss."[3]

We disagree with the Fifth Court of Appeals and hold that the trial court did not abuse its discretion by conducting a pretrial evidentiary hearing on Hill's motion to dismiss. We reverse and remand the case to the court of appeals to address the State's third and fourth issues raised on appeal that challenge the trial court's dismissal of the indictments against Hill.

## HILL'S PRETRIAL MOTION TO QUASH AND DISMISS

### A. Events Prior To The Filing of Hill's Pretrial Motion to Quash and Dismiss

Hill is a member of a prominent Dallas family and a beneficiary of one of the H.L.

---

1. TEX. PENAL CODE § 32.32(b) provides that "[a] person commits an offense if he intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit, including a mortgage loan."

2. TEX. PENAL CODE ANN. § 32.46(a) provides that "[a] person commits an offense if, with intent to defraud or harm any person, he, by deception ... (1) causes another to sign or execute any document affecting property or service or the pecuniary interest of any person." Hill's wife was also indicted for these offenses, but those charges were later dismissed.

3. *State v. Hill*, Nos. 05–13–00421–CR, 05–13–00423–CR, 05–13–00424–CR, and 05–13–00425–CR, 2014 WL 7497992, *11 (Tex. App.—Dallas 2014, pet. granted) (not designated for publication). Because the court of appeals resolved the State's appeal by reversing the trial court's ruling on that basis, it did not address the State's remaining challenges to the trial court's dismissal of the indictments.

Hunt family trusts created for Margaret Hunt, Hill's grandmother. Hill was involved in litigation against his father, Albert G. Hill Jr., (referred to herein as "Hill's father"), over the management of the trust (the "trust litigation"). Hill prevailed in the federal court trust litigation, but shortly thereafter was indicted by the Dallas County District Attorney's Office for mortgage fraud. These state court allegations of mortgage fraud were based upon conduct by Hill and his wife that was unrelated to the issues raised in the federal trust litigation.

Hill challenged the mortgage fraud allegations by filing a pretrial Motion to Quash and Dismiss Indictments Due to Prosecutorial Misconduct. Hill believes that his father, who (through his attorney) reported the allegations of mortgage fraud to the district attorney's office, was disgruntled over the outcome of the federal trust litigation. Hill claims that the District Attorney, Craig Watkins, was under the influence of Hill's father and under the influence of Lisa Blue Baron (who had a pending federal lawsuit against Hill seeking several million dollars in attorneys fees arising out of the federal trust litigation). Hill claimed that the State's prosecution against him was vindictive and that he was selectively prosecuted for conduct that does not normally lead to criminal prosecution.

The following time line summarizes the background facts presented by Hill in support of his motion to quash and dismiss:

November 2009 During the pendency of the multi-billion dollar federal trust litigation among Hill, Hill's father, and the trust, Hill became dissatisfied with his attorneys and hired a new team of lawyers, on a contingent fee basis, to take over from his prior counsel. The new team included Lisa Blue (aka Lisa Blue Baron, but referred to herein as "Blue"), Charla Aldous, Stephen Malouf, and their affiliated law firms. (These lawyers are collectively referred to as "BAM" in several of the federal court pleadings).

February 18, 2010 A federal judge presiding over the trust litigation entered an order finding that Hill's father had testified falsely and had submitted, in bad faith, evidence in connection with the trust litigation. The federal court order also found that arguments advanced by Hill's father's counsel, Michael Lynn, "far exceeded the bounds of advocacy, permissible or otherwise."

February 22, 2010 Four days after this adverse ruling in the trust litigation, Hill's father's attorney, Michael Lynn, delivered a Memorandum to the Chief of the Specialized Crime Division of the Dallas County District Attorney's Office, listing various criminal offenses committed by Hill and his wife. The memorandum states that Hill and his wife executed fraudulent loan documents when applying for a $500,000 home equity loan back in May of 2009. In part, it was alleged that Hill and his wife misrepresented that they owned 100% of their home, when in reality they owned 20% and the trust owned 80%.

February 22, 2010 That same day, Donna Strittmatter, an assistant district attorney, called Stephanie Martin, another assistant district attorney, into a meeting and gave her a copy of the complaint.

March 2010 to Oct. 2010 Jeffrey Tillotson, law partner of Michael Lynn, donated a total of $48,500 in three contributions to the re-election campaign of Dallas County District Attorney, Craig Watkins.

May 2010 The federal trust litigation settled. The settlement represented a substantial financial victory for Hill.

July 2010 Hill's team of attorneys (who included Blue) filed a motion to withdraw as Hill's counsel in the federal trust litigation.

October 2010 Three months after withdrawing from the federal trust litigation, Hill's attorneys filed a federal complaint against the Hills seeking $50 million in attorneys fees.

January 2011 The parties to the fee dispute litigation (Hill and the attorneys) entered into a written agreement to start trial in federal court on April 18, 2011.

January 2011 Donna Strittmatter and Stephanie Martin attended a "pitch session"[4] regarding the complaint that had been brought against the Hills almost a year earlier. Watkins was present at that pitch session, as were other assistant district attorneys.

March 2011 Blue exchanged numerous phone calls and text messages with Watkins and his assistant in the weeks before the indictments were returned. Hill alleged that the pattern of phone calls and text messages between Blue and Watkins revealed a "dramatic spike" in communications in the weeks before the indictments were returned and that the "heated exchange of calls" between Blue and Watkins ended after the indictments were announced. Hill provided evidence of Blue's phone records reflecting that she placed or received a total of 37 calls to or from Watkins's office and cell phone numbers. Of these 37 calls, 14 occurred in March 2011 alone, the month the Hills were indicted, including 6 on the night before the indictments were presented to the Grand Jury. Blue's records reflect an additional 28 calls and text messages with Watkins's secretary, 19 of which were in March 2011.[5]

March 3, 2011 Blue met with Watkins to take publicity photos in connection with a $100,000 donation Blue made in Watkins's honor to SMU law school in 2010.

March 9, 2011 Blue had a fund raiser for Watkins at her house and contributed $5000 to Watkins's campaign.

March 30, 2011 Blue traded seven calls with Watkins's cell phone number. Blue and Watkins again met for dinner.

March 31, 2011 A Dallas grand jury returned multiple indictments against the Hills for the offenses of making a

**4.** A pitch session was described by witness, Terri Moore, as a type of informal meeting among some of the attorneys in the District Attorney's Office to discuss the pros and cons of presenting a case to the grand jury. Specifically, Ms. Moore testified that "the way it works with a pitch session is, you know, the person that wants the pitch makes their pitch, makes their presentation, and kinda brainstorms it, gets the input of other people, what would be–what–you know, how they might best present it or what may be issues. At the conclusion of it, the whole point was, do I have the support of the office in going forward. There's no formal vote taken. There's no secret ballot."

**5.** Hill attached to his motion to dismiss phone records also indicating that, from January of 2010 through April of 2010, Blue placed or received just one call with Watkins's phone number and none with his cell phone number. Blue's records reflect no calls or text messages during that time period with Watkins's assistant. Hill also included phone records indicating that Blue did not place or receive another call with either Watkins's office or his cell phone number for nearly three weeks after the indictments were publicly announced, and she placed only two during the entire month.

false statement to obtain property or credit and securing execution of a document by deception.

April 4, 2011 Hill and his wife were notified by the Dallas County District Attorney's Office that they had been indicted on multiple felony counts of mortgage fraud and that warrants had been issued for their arrests. They claim that this was the first they had heard of any such investigation.

April 20, 2011 The federal fee dispute trial began. Hill and his wife were advised not to testify in light of the indictments against them. After the trial, the magistrate judge made findings against the Hills and in favor of Blue and the team of attorneys.

June 14, 2011 Blue gave a court-ordered deposition in connection with the federal fee dispute litigation. She admitted during this deposition that she had gone to talk to First Assistant district attorney, Terri Moore, about the indictment against the Hills because Hill was "not just [her] client, he was a close friend." Blue also admitted that she had received a call from Craig Watkins "shortly before the indictments came down," and he "said something about the—there was—there could be an indictment or are you still interested in the indictments. ...." Blue said that she responded to Watkins by saying that she didn't "represent the Hills anymore and so it would be inappropriate for [her] to talk about it." When asked if she spoke on any other occasion with any employee or representative of the District attorney's office regarding the Hills, she responded, "not that I recall." Blue mentioned that there was one other phone conversation with Watkins, but she stated that she could not remember when or what it was about. Blue's deposition testi-mony suggests that these were the only two phone conversations she recalled having with Watkins during that time period.

December 31, 2011 The federal judge issued a Memorandum Opinion and Order holding that the Hills breached the attorney fee agreement. Judgment was entered against Hill and his wife for $21.9 million. Blue's share of the award was $7.3 million.

October 12, 2012 Ten months later, Hill's defense counsel in this case met with Assistant District Attorney, Deborah Smith. Smith had taken over the cases against the Hills. Hill claims that Smith "expressed significant concerns about the cases against the Hills." Hill also asserted that Smith "stated that she would refuse to try the case if the District Attorney's Office decided to go forward on any of the charges." Hill claims that Smith even "apologized" on behalf of the District Attorney's office.

October 2012 Shortly after this meeting, the District Attorney's office moved to dismiss all charges against Hill's wife "in the interest of justice."

October 22, 2012 Deborah Smith was taken off of Hill's case and was reassigned to prosecute animal cruelty cases.

November 16, 2012 Hill filed a Motion to Quash and Dismiss Indictments Due to Prosecutorial Misconduct.

### B. Arguments Raised In Hill's Motion To Quash and Dismiss

In his motion to quash and dismiss, Hill first claimed that he was deprived of his due process right to a disinterested prosecutor. Hill asserted that both his father and Blue were responsible for large campaign donations having been made to

Watkins. Hill claims that the evidence demonstrates that Watkins was under the influence of Hill's father (who had a motive to retaliate against Hill based on the outcome of the federal trust litigation), and under the influence of Blue (who had a pending suit against Hill seeking several million dollars in attorneys fees). Second, Hill claimed in his motion to dismiss that the prosecution against him was vindictive, and thus violated his rights to due process, because it was retaliation against him for exercising his legal right to engage in the trust and fee dispute litigations. Third, Hill asserted that his right to equal protection was violated because the District Attorney's office chose to selectively prosecute Hill and his wife for conduct that does not normally lead to criminal prosecution.

### C. The Pretrial Evidentiary Hearing on Hill's Motion To Quash and Dismiss

On February 14, 2013, the parties appeared before the trial court. In advance of this hearing, Hill had served subpoenas on various individuals from the District Attorney's office, including Watkins, Moore, Martin, and Strittmatter. He also served subpoenas on Blue and the other attorneys who had represented the Hills in the trust litigation. The State filed motions to quash the subpoenas, but it does not appear that the trial court expressly ruled on these motions to quash. Rather, the trial court judge simply stated that she was going to conduct an evidentiary hearing on Hill's motion to quash and dismiss.[6] The State argued that the court's decision to grant an evidentiary hearing was in violation of Article 39.14[7] and would allow Hill discovery to which he was not entitled. The State pointed out that the defense had filed a motion to quash and dismiss, not a motion for discovery under Article 39.14. The court granted a brief recess so that Hill's attorneys could amend the motion to quash and dismiss to include a request for discovery, which they did.

When the defense returned with an amended motion to quash and dismiss that included a motion for discovery, the State continued to object to the court's decision to allow an evidentiary hearing. It was the State's position that the defense team was "trying to develop evidence they don't have, which is discovery." The State argued that the defense still had not made the proper showing under Article 39.14.

The trial court judge disagreed, stating that the defense team had presented sufficient evidence in the form of their motion and in the response to the State's objections that "[rose] to the level of a prima facie showing" and "they [had] a right to have a hearing on all of the allegations that they've made in the motion."[8]

---

**6.** The trial court judge explained to the prosecution that, "if they are able to present evidence that Lisa Blue was calling the shots as to whether or not a case is presented to the Grand Jury ... based on contributions or based on some benefit that a friend of his [Craig Watkins] would get, then I think that would violate his right. And I think that the defense is entitled to have a hearing on those very particular points. So who would he need to call? Lisa Blue, obviously."

**7.** TEX. CODE CRIM. PROC. Art. 39.14. The version of Article 39.14 applicable to this case is the one in effect prior to January 1, 2014. Acts 2013, 83rd Leg., ch. 49 (S.B. 1611) (amended 2015) (current version at TEX. CODE CRIM. PROC. Art. 39.14).

**8.** The trial court judge told the prosecution that she was "granting the Defendant a right to have a hearing to try to prove to the court that this case was handled differently from any other case that would come before the DA." The trial court judge further explained, "But, I mean, aren't these facts unique, though, in that you have a private lawyer, under oath and via e-mails, bragging about her ability to use the District Attorney in a manner to intimidate other people, and then,

The prosecutor "respectfully disagree[d]" with the trial court because the defense attorneys had not "met their showings under 39.14." At that point, the trial court judge "overruled" the State's objections and made it clear that she was going to allow the defense to question witnesses in order to prove their right to prevail on the motion to quash and dismiss.[9] The trial court judge summed up her conclusion by saying that the affidavits submitted by the State from Stephanie Martin and Donna Strittmatter were lacking.

> [The affidavits] did not address what, if anything, caused them to present evidence to a Grand Jury at that particular point in time, that is coincidental, with civil lawyers in a couple of weeks ahead of time making huge contributions to the District Attorney, and you have admissions by Ms. Blue that she discussed the indictments with Mr. Watkins. That is a prima facie case that supports their motion to dismiss, and they have a right to make inquiries. They do not have to rely on an affidavit. And why [sic] I find you to be a credible prosecutor—and Ms. Martin, of course, is credible and well respected—that does not mean that the Defendant doesn't have a right to cross-examine and make their case. ... This is a hearing on a motion to dismiss or a motion to quash, and they have a right to present evidence.

When Blue took the stand, she invoked her Fifth Amendment right on all questions. Hill's attorney then attempted to call Watkins to the stand to testify. Counsel

for the State objected on the basis of lawyer/client privilege, arguing that the conversations between Blue and Watkins were work product because they would "reveal [Watkins'] mental impression." The trial court judge disagreed, insisting that "we can limit his testimony just to conversations that he had with Ms. Blue." The trial court judge stated that she did not agree that conversations with Watkins and Blue were work product or privileged attorney/client communications. The trial court judge instructed the State to "bring Mr. Watkins down." However, an assistant district attorney stated that she had spoken to Watkins, that he was not going to make himself available, and that he was "ill" and not "in a condition to be able to testify in this matter." The judge granted a continuance.

The lawyers met again before the trial court on March 4, 2013. Evidently, on March 1, 2013, the defense learned of an affidavit from Terri Moore, who was Watkins's First Assistant District Attorney. The affidavit was filed in connection with the federal fee dispute litigation. The State was attempting to prevent the defense from cross examining Ms. Moore regarding what she stated in the affidavit. The trial court judge displayed confusion over the State's position:

> Well, [Terri Moore] hasn't been called, and there's no evidence that she's not going to testify, so I don't have that before me right now; but it's like any other thing. Stephanie Martin filed an affidavit, and so did Ms. Strittmatter,

---

concurrently, you have contributions being made to the DA from people that really, normally, don't have any interest in—you know, coincidentally partners of lawyers that are involved and Ms. Blue, herself, making contributions that coincide with the decision that's being made? So, I mean, that is pretty unique in and of itself."

9. The State sought mandamus relief from the Fifth Court of Appeals, complaining, among other things, about the trial court judge's finding that Hill had established a prima facie case of vindictive prosecution. Because the trial court judge dismissed the indictments, the Fifth Court of Appeals dismissed the State's mandamus petition as moot.

and then you want to claim that, no, they're not—are you gonna object to their testimony as well? We haven't even gotten there because your folks haven't even called them as witnesses yet. ... [M]y question to you is: Why should this Court be allowed for you to select what evidence is made available to the Defense and to the Court to make its decision? Nowhere in Stephanie Martin's or Strittmatter's affidavit does it say who was in control of the investigation and the timing of the investigation and the timing of presentation of the case to the Grand Jury. Nowhere does it say whether anyone was told to hold off on the investigation, continue the investigation, based on acts that were happening— that were taking place outside of this building. ... So ... the State is, basically, telling the Court, you just need to be satisfied with whatever information I give to you.

The State responded that "Stephanie Martin can respond to those—those very narrow inquiries, ... and that [it was] not gonna object to [Stephanie Martin's] presentation of information to the Court."

The trial court continued the hearing on March 7, 2013. The State sought to present evidence regarding its claim of privilege, purportedly as an objection to Craig Watkins testifying. The trial court judge denied that request.

Hill's counsel called Watkins as a witness. After a private consultation with counsel, Watkins took the stand and refused to answer any questions "because of [his] right as an attorney to have the privilege and to protect [his] work product." The trial court judge ordered Watkins to answer the questions. Watkins refused, and the judge held him in contempt.

Other witnesses testifying at the hearing included Assistant District Attorneys Terri Moore (Watkins's First Assistant at the time), Donna Strittmatter, and Stephanie Martin. Terri Moore testified that Donna Strittmatter and Stephanie Martin came to her about a complaint they had received from Hill's father, and they asked permission to use the resources of the District Attorney's office to investigate that allegation. Moore stated that she warned Strittmatter and Martin that "dad is trying to get some kind of strategic advantage over his son in the lawsuit." She advised them to "[b]e careful, because he's just using the office." Moore then advised that they inform Hill's father that, "once [we] go down that road, if [we] find criminal conduct, we're not gonna turn back just because father and son may have settled their differences in the meantime." Moore also testified that, after giving Strittmatter and Martin approval to use the resources of the office to investigate, "there was a point where Ms. Blue came to [her] office" and provided Moore with a federal opinion that said that Hill's father had "credibility problems." Moore stated that Blue was trying to help Hill.

Donna Strittmatter was the next to testify. She said that she and Stephanie Martin invited Watkins to the pitch session. She also said that she left the pitch session feeling like everyone in attendance approved of presenting Hill's case to the Grand Jury. The trial court judge then asked Strittmatter if she knew if Watkins personally directed an investigation of Hill or influenced the timing of the presentation of the case to the Grand Jury. Strittmatter responded only that he was present at the pitch session.

Stephanie Martin testified after Strittmatter. Martin clarified that she received a second complaint about Hill's mortgage loan from David Pickett, who was a trustee of the Margaret Hunt Trust. Pickett believed the trust was the true complainant because the trust owned 80 percent of the

house that allegedly the Hills had fraudulently mortgaged. Martin testified that Pickett was pushing that Hill be indicted. The trial court judge then questioned Stephanie Martin:

THE COURT: Ms. Martin, let me ask you this: The—Defendant's Exhibit 5 and 6 [10] appear to be Mr. Pickett urging you to put this case in front of a Grand Jury; if not, then he wanted to meet with your supervisor.

THE WITNESS: Yes.

THE COURT: Had you been giving him the impression that you were not interested in presenting the case to the Grand Jury?

THE WITNESS: No.

THE COURT: No?

THE WITNESS: No. He was—he was angry because it hadn't been presented yet. And he—they had given me, in their minds, everything that I needed. But I went and got it myself.

THE COURT: Right.

THE WITNESS: And it's not that I wasn't being distrustful of what they gave me; it's that I couldn't use their documents in trial. I had to have my own set of documents under business records affidavit to present at trial.

\* \* \*

THE COURT: So did you—did you leave him with the impression that you were intending on presenting it to the Grand Jury?

THE WITNESS: In my mind, I was always presenting it to the Grand Jury. I don't know what impression he had.

THE COURT: So, from the moment that you got the complaint, that you reviewed the exhibits, in your mind, you had a good case?

THE WITNESS: Yes.

THE COURT: At any point in time did anyone decide for you when you were going to submit the case before the Grand Jury?

THE WITNESS: No.

THE COURT: At any time did anyone ask you to stop investigating the case?

THE WITNESS: No.

THE COURT: Did anyone, other than you—was anyone, other than you, responsible for how you investigated this case?

THE WITNESS: No.

THE COURT: Did anyone imply that if you didn't present this case to the—to the Grand Jury, that your supervisor would be upset?

THE WITNESS: No.

THE COURT: Did you feel that—if you didn't think it was a case worthy of doing it, would you have presented it?

THE WITNESS: I wouldn't have presented it to the Grand Jury if I didn't have the evidence to support going to the Grand Jury.

\* \* \*

THE COURT: Did you do anything—did you give this case any special consideration that you wouldn't any other case, other than the fact that it—it would be scrutinized?

THE WITNESS: No. This was, actually, one of the easier cases I had.

\* \* \*

THE COURT: ... And no one tried to interfere with your investigation? Other than Mr. Pickett, obviously, pushing you, pushing you to get an indictment—

THE WITNESS: Correct.

10. Defendant's Exhibit 5 is a letter from David Pickett, dated November 10, 2010. Defendant's Exhibit 6 is an e-mail from David Pickett dated September 8, 2010.

At one point during Martin's testimony, the trial court judge expressed doubts about Hill's motion:

> THE COURT: Okay. Well, I still have not seen any evidence to indicate that Mr. Watkins relayed to anybody in the DA's office, either in the beginning—of the importance of not filing the case against him because that's not what Ms. Blue wanted and then when she changed her mind to going ahead and filing the case with the Grand Jury. I haven't seen that.
>
> HILL'S COUNSEL: I understand that. And I think what our proof is— is and is going to be is that Mr. Watkins made the final decision. He was part of a group that he employed—
>
> THE COURT: That's all you got?

The trial court judge then asked Martin some questions regarding why Martin had invited Watkins to the pitch session:

> THE COURT: [J]ust for clarification, why did you think you had to do a pitch to Mr. Watkins? Just because you were concerned about—
>
> THE WITNESS: The media attention was—was my main reason.
>
> THE COURT: But you were confident that you had a good case?
>
> THE WITNESS: Yes. It never crossed my mind that—that they wouldn't be indicted . . . .

However, the trial judge's inclination toward denial of the motion seemed to do an about-face after Martin read from one of her handwritten notes. Martin had written that Pickett was calling her "all the time" about the case and that she told him that the "investigation [was] going slowly." Her note also mentioned that she told Pickett that "in research [she'd] done, [she] didn't see how [she] could prove his criminal case." Martin also noted that the bank was not interested in prosecuting the case because the loan was repaid. The trial court judge seemed very interested in this particular exchange, and said to Martin, "The bank is not interested in prosecuting, and your client is not a victim; that's what you told Mr. Pickett?" Martin then confirmed that she was instructed to consult with Terri Moore about what she had told Pickett, and Moore told Martin to continue on with the investigation. The trial court judge then clarified, "You've got David Pickett saying you need to file this case. You're telling him, I don't think I have a case. You bump it up to Terri Moore, and Terri Moore tells you, investigate it." Martin also told the judge that she would have been surprised if Watkins had told her not to indict the Hills.

After Martin testified, the trial court judge revealed her thoughts about Martin's testimony.

> THE COURT: Okay. Well, before lunch I thought I was going to deny the motion. Now, I'm not so sure, based on Ms. Martin's testimony. I'm not saying that she's necessarily corrupt or did anything to spite the Defendant. However, she has no idea why Ms. Moore was directing her to continue this investigation. I don't—I don't put much credibility in Ms. Moore's testimony because of her relationship with Ms. Blue and with Craig.
>
> So the only people that know—okay. So we've got a pitch meeting that's only being held because of—it's a high—high-publicity case. Potentially. You're dealing with really rich people. So she doesn't want to go forward without Craig's go-ahead. Everybody says that Craig didn't do anything at the meeting, except Stephanie. We get a different story from her. She re-

members him asking questions, encouraging her to even look for more crimes that he might have committed. He's calling the shots. It doesn't matter what everybody else in the meeting says. If Craig says no, she says not doing it. She says the meeting was for Craig because his name was gonna be on the line; and if he said no, it wasn't gonna happen.

So the only person that we have left to know what Craig's motivation was to be at the pitch meeting to encourage the indictments is Craig and, maybe, Ms. Blue, and neither one of them are testifying.

So how do you fix that? Because I've already determined he has a right to explore this line of questioning.

The trial court judge expressed extreme frustration that Watkins and Blue were the only two persons who would know whether Watkins's decision to pursue these charges against Hill could have been influenced by Blue and Hill's father, but neither Watkins nor Blue were testifying.

THE COURT: Well, we've narrowed it down to what the issue is, haven't we? I want to know why Craig was at that meeting that was put together for him, encouraging them—he—based on Ms. Martin—it was her case. Ms. Martin says he was the end-all to be-all. If he said no, it wasn't gonna happen; if he said yes, it was gonna happen. He's in the thick of it. He's the guy .... [I]f the evidence supporting the Defendant's case is admitted in evidence before this Court, the evidence that I felt supported the need for a hearing, why shouldn't I dismiss it if the State is blocking him from having his hearing, so to speak.

After the attorneys argued their positions, the judge ruled that, "because of the failure of Mr. Watkins to testify in this hearing, the Defendant has been denied his right to have a meaningful hearing on his Motion to Dismiss. And on that basis, I'm dismissing the cases."

## D. The State's Direct Appeal

The State raised four issues on direct appeal. In its first two issues, the State challenged the propriety of the evidentiary hearing, arguing that Hill was not entitled to such a hearing because he failed to provide evidence to establish a constitutional violation. In its third and fourth issues, the State challenged the trial judge's dismissal of the indictments with prejudice based on Watkins's refusal to testify at the hearing.

The Fifth Court of Appeals resolved the State's first and second issues in favor of the State, holding that the trial court judge erred in conducting an evidentiary hearing, "because Hill did not make the necessary showing related to his constitutional claims." The court of appeals stated that Hill's failure "to make a prima facie showing" meant that "the trial judge erred in granting Hill an evidentiary hearing, which resulted in the dismissal of the indictments."[11] Without addressing the third and fourth points of error, the court of appeals reversed the trial court's dismissal of the indictments and ordered that the indictments against Hill be reinstated.

In deciding the issue of whether Hill was entitled to an evidentiary hearing to try to prove his allegations of prosecutorial misconduct, the court of appeals noted that "there is no need to look beyond what the trial judge had in her hands at the time she decided that Hill met his initial burden of proof related to his constitutional

11. *Hill* at *6.

claims."[12] The court of appeals considered only Hill's motion and the attached exhibits to determine whether the trial court erred in conducting an evidentiary hearing.

The court of appeals held that federal law limits the trial court's authority to hold a pretrial hearing. Citing to the United States Supreme Court case of *United States v. Armstrong*,[13] and to the Fifth Circuit cases of *United States v. Webster*[14] and *In re United States*[15], the court of appeals concluded that "a defendant who claims his constitutional rights were violated by some form of prosecutorial misconduct must make out a prima facie case of his claims *before* he is entitled to an evidentiary hearing or discovery."[16] To do this, said the court of appeals, "a defendant must present facts sufficient to create a reasonable doubt about the constitutionality of his prosecution," and generalized allegations are not enough.[17] The court of appeals held that, before appellant is entitled to an evidentiary hearing, he must make a prima facie case "with evidence capable of dispelling the presumption that the prosecution of him was in good faith and in compliance with the Constitution."[18] The court of appeals concluded that Hill did not meet his burden and thus was not entitled to an evidentiary hearing.

We granted Hill's petition for discretionary review to address whether the trial court erred in holding a pretrial evidentiary hearing on Hill's motion to quash and dismiss.[19]

---

12. *Id.* at *1.

13. 517 U.S. 456, 464–65, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

14. 162 F.3d 308, 334 (5th Cir.1998).

15. 397 F.3d 274, 284 (5th Cir.2005).

16. *Hill* at *5 (emphasis in original).

17. *Id.* (citing to *Webster*, 162 F.3d at 334 (first quoting *United States v. Jennings*, 724 F.2d 436, 445–46 (5th Cir.1984); then citing *United States v. Sanchez*, 517 F.3d 651, 671 (2d Cir. 2008)).

18. *Id.* at *6 (first citing *Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480; then citing *In re United States*, 397 F.3d at 284).

19. Hill's counsel framed the issue in his Petition for Discretionary Review as one seeking clarification of what constitutes enough evidence to be entitled to a hearing:

> To establish a prima facie case of selective prosecution in violation of the Fifth and Fourteenth Amendments, and to obtain a hearing under the "presumption of prosecutorial vindictiveness" method, a defendant must provide "some evidence" that shows: (1) the government singled out the defendant for prosecution and has not proceeded against others similarly situated based on the type of conduct for which the defendant is charged; and (2) the government's discriminatory selection is invidious. Once the defendant makes this showing, the burden shifts to the State to justify the discriminatory treatment.
>
> Appellee asks this Court to clarify what constitutes "some evidence" and find that so long as a defendant attaches a proffer of evidence to a motion to dismiss due to prosecutorial misconduct that the trial court in its discretion determines to be a colorable claim of a constitutional violation, the defendant has attached "some evidence," and a trial court should be permitted to conduct a hearing on the motion to dismiss.
>
> Appellee not only attached "some evidence" showing a constitutional violation, but in fact attached "exceptionally clear evidence." As a result, the Court of Appeals erred when it: (1) sustained the State's second issue and concluded that Appellee "did not make the proper showing sufficient to establish a prima facie case ..." of the fact that the former elected district attorney of Dallas County engaged in prosecutorial misconduct by allowing himself to be corruptly influenced by Blue in return for indicting Appellee; (2) found that the trial court erred in conducting a hearing on Appellee's motion to dismiss based upon prosecutorial misconduct; (3) vacated the trial court's Order Granting Motion to Dismiss; and (4) remanded the case to the trial court

## ANALYSIS

### A. Article 28.01—The Trial Court Had Discretion To Hold A Pretrial Hearing

■ Surprisingly, neither the parties nor the court of appeals placed much, if any, weight on Article 28.01,[20] which gives a trial court discretion to hold a pre-trial hearing on preliminary matters. Under Article 28.01, a court "may set any criminal case for a pre-trial hearing before it is set for trial upon its merits ...." The pre-trial hearing shall be to determine, among other things, "pleadings of the defendant,"[21] exceptions to the form or substance of the indictment,"[22] or "discovery."[23] It is well settled that, "whether the trial judge conducts a pre-trial hearing at all rests within his [or her] sound discretion."[24] An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles."[25] Article 28.01 was designed to enable the trial judge to dispose of certain matters sometime prior to trial to avoid delays after jurors and witnesses have been summoned.[26] "The trial court has discretion to 'set any criminal case for a pre-trial hearing before it is set for trial upon its merits.' "[27]

■ The State did make the argument that there is not a provision in Article 28.01 expressly allowing for an evidentiary pre-trial hearing on a motion to dismiss. It is true that only Subsection (6) of Article 28.01 expressly allows for "oral testimony" at a hearing to resolve a defendant's motion to suppress,[28] and there is no other express allowance in Article 28.01 for oral testimony at a pretrial hearing to resolve any other preliminary matter raised by the defendant. However, we find that drawing a negative implication—that oral testimony might not be permitted at a pretrial hearing to resolve any matter other than a motion to suppress—from the express directive in Article 28.01(6) would be a mis-

to reinstate the indictments against Appellee.

**20.** Tex. Code Crim. Proc. art. 28.01, § 1 ("The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits, and direct the defendant and his attorney, if any of record, and the State's attorney, to appear before the court at the time and place stated in the court's order for a conference and hearing. The defendant must be present at the arraignment, and his presence is required during any pre-trial proceeding.").

**21.** *Id.* at § 1(2).

**22.** *Id.* at § 1(4).

**23.** *Id.* at § 1(8).

**24.** *Hicks v.* State, 508 S.W.2d 400, 403 (Tex. Crim.App.1974) (observing Article 28.01 is not mandatory upon the court but is directed to the court's discretion.); *Calloway v. State*, 743 S.W.2d 645, 649 (Tex.Crim.App.1988); *Cantu v. State*, 546 S.W.2d 621, 621 (Tex. Crim.App.1977); *Smith v. State*, 468 S.W.2d 828, 830 (Tex.Crim.App.1971) (citing to *Bos-*

*ley v. State*, 414 S.W.2d 468, 470 (Tex.Crim. App.1967)); *Bell v. State*, 442 S.W.2d 716 (Tex.Crim.App.1969).

**25.** *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990) (en banc) (citing to *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1985)).

**26.** *Johnson v. State*, 803 S.W.2d 272, 283 (Tex.Crim.App.1990), *cert denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 685 n. 6 (Tex.Crim. App.1991).

**27.** *Id.* (citing to Tex. Code Crim. Proc. art. 28.01).

**28.** Article 28.01, section 1(6) Motions to suppress evidence—When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court[.]"

application of the rules of statutory construction.[29] In *Ford v. State*,[30] this Court held that "[a] trial judge may use his discretion in deciding what type of information he considers appropriate and reliable in making his pre-trial ruling."[31] This Court also noted in *Ford* that Article 28.01 was clear about which acts were discretionary and which were mandatory.

> In drafting art. 28.01, the Legislature obviously knew the difference in meaning between the terms 'may,' 'must,' and 'shall,' because it used all three terms in the statute, depending upon its purpose. Article 28.01, § 1 begins with the phrase, 'The court *may* set any criminal case for a pre-trial hearing[.]' That is, the trial court has the discretion to conduct a pre-trial hearing, but it may decline to do so. *See Moore v. State*, 700 S.W.2d 193, 205 (Tex.Crim.App.1985) (a trial court is not required to conduct a pre-trial hearing, even when it is requested). Conversely, the defendant "must be present at the arraignment." Art. 28.01, § 1. *See Adanandus v. State*, 866 S.W.2d 210, 218 (Tex.Crim.App. 1993). In Section 2, the Legislature stated that "the defendant *shall* have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters." *See Postell v. State*, 693 S.W.2d 462, 467 n.10 (Tex.Crim.App.1985) (Clinton, J., concurring) (stating that if the trial judge exercises his discretion to have a pretrial hearing, "legislative history makes plain that the proviso in § 2 means that the trial court must give an accused sufficient notice of the hearing day to allow him ten days in which to prepare and file his motions and other preliminary matters, and that they must be filed seven days before the hearing to be considered by the trial court unless for good cause shown the trial court grants leave to file thereafter."). In this statute, the Legislature used the term "may" when it intended discretionary acts and procedures, and it used "shall" or "must" when it intended mandatory acts or procedures.[32]

 The plain language of Article 28.01, § 1, contains no express legislative intent to deprive trial courts of their discretionary authority to hold pretrial evidentiary hearings on preliminary matters that can,

---

**29.** The statutory construction aid *expressio unius est exclusion alterius* means that the expression of one thing implies the exclusion of other, unexpressed, things. This maxim, which is "a product of logic and common sense .... applies only when the statute under consideration is intended to serve as a comprehensive treatment of a topic or when it relates to a specific exception to a general rule." *Ford v. State*, 305 S.W.3d 530, 537 n. 27 (Tex.Crim.App.2009) (citing to *Dallas v. State*, 983 S.W.2d 276, 278 (Tex.Crim.App. 1998)); *see also Chase v. State*, 448 S.W.3d 6, 14 (Tex.Crim.App.2014) (noting that "courts have held that the negative-implication canon of construction should be employed with great caution," and that "the force of any negative implication ... depends on context. The canon does not apply 'unless it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it.' ") (first citing *Ford v. United States*, 273 U.S. 593, 611–12, 47 S.Ct. 531, 71 L.Ed. 793 (1927) and then citing *Marx v. General Revenue Corp.*, —— U.S. ——, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013)).

**30.** 305 S.W.3d 530 (Tex.Crim.App.2009).

**31.** *Id.* at 539 (citing *Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991)); *see also Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991) (op. on reh'g) (noting that Rule 404(b) states that evidence of other acts of misconduct "may" be admissible for purposes other than character conformity means that the examples listed in the rule are illustrative, not exclusive).

**32.** 305 S.W.3d at 537, n. 26 (emphasis in original).

and should .be, resolved expeditiously.[33] Therefore, we would have to infer or imply an intent to limit a trial court's discretion to hold an evidentiary pretrial hearing on a motion to quash or dismiss based on the language contained in Article 28.01, § 1(6), expressly authorizing oral testimony at a pretrial hearing on a motion to suppress. This we decline to do. We conclude that, under the plain language of Article 28.01, the trial court judge had the discretion to hold an evidentiary hearing on Hill's motion to quash and dismiss.[34]

This conclusion is supported by our decision in *Neal v. State.*[35] In *Neal*, the appellant raised for the first time on appeal a violation of his rights under the due process clause of the Fourteenth Amendment based on prosecutorial vindictiveness. He stated that the prosecutor acted in retaliation by re-indicting him a second time ("the State dismissed Neal's charge. completely, the civil suit was heard, and then the State re-filed the same charge").[36] The court of appeals agreed with Neal and reversed the trial court judgment, holding that the sequence of events raised a presumption .of vindictiveness and that there was. no evidence in, the trial record to overcome it.[37] This Court reversed the appellate court's decision, holding that Neal had failed to preserve error by not filing a motion to dismiss or quash the indictment based on a claim of prosecutorial vindictiveness that could have been resolved at a pretrial hearing.

The Texas Code of Criminal Procedure requires that, if a defendant seeks dismissal of an indictment as the remedy for his constitutional or statutory claim, the Rule 33.1 requirement of timeliness means that the claim generally must be raised and ruled upon before trial. Under Article 28.01, a trial court must determine such "preliminary matters" at a pre-trial hearing. All preliminary matters which are not raised at the pre-trial hearing, are generally considered forfeited. A motion to set aside, dismiss, or quash an indictment should be made at the first opportunity, and must be presented to the trial court prior to an announcement by that party that it is ready for trial. This rule serves the salutary purpose "of preventing unnecessary trials and deterring the interruption of a

---

**33.** *See Boykin*, 818 S.W.2d at 785 ("When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the. statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment."). *See Taylor v. State*, 886 S.W.2d 262 (Tex.Crim.App.1994) (en banc). In *Taylor*, this Court held that "[t]he entrapment defense is unique in that the Legislature deliberately provided it may be tested and determined at a pretrial hearing." *Id.* at 265 (citing to Article 28.01, § 1(9), which simply lists "entrapment" as one of the matters to be determined at a pretrial hearing, without any additional statutory language regarding how the court may make its determination).

**34.** We are not holding that it can never be an abuse of discretion for a trial court to hold an evidentiary hearing. By the same token, we are not holding that a trial court always abuses its discretion by refusing an evidentiary hearing. The trial court judge has the discretion to make that call and only abuses his or her discretion when the decision falls outside the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g). In this case, Hill's motion was a pleading accompanied by 44 exhibits. It was not a skeletal request that, on its face, was clearly unmeritorious or solely a question of law. Under these facts, the trial court judge's decision to hold an evidentiary hearing on Hill's motion to quash and dismiss was not an abuse of her discretion.

**35.** 150 S.W.3d 169 (Tex.Crim.App.2004).

**36.** *Id.* at 172.

**37.** *Id.* at 173.

trial on the merits for any objection relating to the institution and presentation of the charge." It would make little sense to wait until after a trial is complete before complaining that the trial should never have taken place because the indictment was defective or should have been dismissed or quashed.[38]

We also noted in *Neal* that, "[b]ecause appellant never made his due-process claim [of prosecutorial vindictiveness] in the trial court, that court was never given the opportunity to either hear evidence or rule on it."[39] Quoting from *Bone v. State*,[40] we opined that, "[u]nder our system of justice, the criminal defendant is entitled to an opportunity to explain himself and present evidence on his behalf."[41] A prosecutor should have the same opportunity "to explain his actions before a court condemns him as having violated a defendant's due-process rights with a vindictive prosecution."[42] If Neal had properly raised the issue of vindictive prosecution in a written pretrial motion, "the prosecutor could have testified concerning any new evidence ... that had come to his atten-

tion since the original dismissal of the charges."[43]

Following *Neal*, it would make no sense to require a defendant to preserve a complaint based on vindictive prosecution by filing a pretrial motion to quash and dismiss, but then limit the trial court's discretion to hold an evidentiary hearing on such motion.[44]

## B. **The Impact of Federal Case Law**

The State urges this Court to follow federal case law holding that a defendant must present "some evidence" of selective prosecution in order to merit an evidentiary hearing. However, the federal courts setting this threshold requirement did so in the context of addressing whether the trial court erred in denying a defendant's request for an evidentiary hearing.[45] Thus, the State's argument raises this hypothetical question: Even if we were to assume that Hill had not met such evidentiary threshold sufficient to merit a hearing,— and thus agree that it would *not* have been an abuse of discretion for the trial court in this case to *not* hold an evidentiary hearing on Hill's motion to dismiss,—would

38. *Id.* at 175–76 (internal citations omitted).

39. *Id.* at 178.

40. 77 S.W.3d 828 (Tex.Crim.App.2002).

41. *Neal*, 150 S.W.3d at 178 (quoting *Bone*, 77 S.W.3d at 836).

42. *Neal*, 150 S.W.3d at 178–79.

43. *Id.* at 179.

44. *See also State v. Terrazas*, 962 S.W.2d 38, 41 (Tex.Crim.App.1998). In *Terrazas*, after an evidentiary hearing, the trial court dismissed the indictment with prejudice. The court of appeals reversed the dismissal, holding that the trial court lacked authority to dismiss the indictment. On review, this Court held that the court of appeals erred in holding that the

trial court lacked authority to dismiss the indictment. We reversed and remanded to the court of appeals to address the merits of the trial court's dismissal.

45. *See, e.g., United States v. Peterson*, 652 F.3d 979, 981–82 (8th Cir.2011) (observing that the district court properly denied an evidentiary hearing because defendant "has not shown any credible evidence of purposeful discrimination."); *United States v. Falcon*, 347 F.3d 1000, 1006 (7th Cir.2003) (finding the court did not err in denying defendant's motion to dismiss for vindictive prosecution without an evidentiary hearing because he did not offer sufficient evidence to raise a reasonable doubt that the government acted properly in bringing the charges); *United States v. Perry*, 152 F.3d 900, 903 (8th Cir.1998) (holding that the district court did not err in denying Perry's claim of selective prosecution without conducting an evidentiary hearing).

that mean that it *was* an abuse of discretion for the trial court *to* hold a pretrial evidentiary hearing? Because a trial court's decision to conduct a pretrial evidentiary hearing on a preliminary matter is discretionary, our answer to that question is no. Would that it were so simple.[46]

The State argued that Hill's request for an evidentiary hearing on his motion to dismiss was, in reality, an attempt to conduct impermissible discovery, and that the trial court's dismissal was, in effect, an impermissible sanction against the State for failing to turn over privileged work product. There might be a grain of truth to this argument. The trial court judge did not address the merits of Hill's motion nor state on the record that she was dismissing the indictments because Hill met his burden to prove that he was being vindictively or selectively prosecuted. Rather, she dismissed the indictments "because of the failure of Mr. Watkins to testify in this hearing."

However, the court of appeals did not expressly address whether either side had made a valid argument regarding whether the questioning of Watkins was impermissible under our discovery statute, Article 39.14.[47] Moreover, the court of appeals did not address whether the evidence that *was* presented at the hearing supported either the granting or the denial of Hill's motion to dismiss notwithstanding the lack of testimony from Blue or Watkins.

In following the Supreme Court's decision in *United States v. Armstrong*,[48] the court of appeals equated a trial court's decision to hold a pretrial evidentiary hearing with a trial court's order to compel discovery.[49] In *Armstrong*, the defendants were indicted on federal charges for selling crack cocaine and using firearms in connection with drug trafficking.[50] They moved for discovery under Federal Rule of Criminal Procedure 16 to help prove their claim of selective prosecution based on race.[51] When the Government refused to comply with the requested discovery, the District Court granted the defendants' motion to dismiss.[52] The Ninth Circuit affirmed the District Court's decision,[53] but the United States Supreme Court reversed, holding that, for a defendant to be entitled to discovery on a claim that he was singled out for prosecution on the basis of his race, he must make a threshold showing that the Government declined to prosecute similarly situated suspects of other races.[54] The Supreme Court's holding turned on its interpretation of the federal discovery statute. It found that Federal Rule 16(a)(1)(C) authorizes defendants

46. http://deadline.com/2016/01/hail-caesar-second-trailer-coen-brothers-1201681152/

47. Tex. Code Crim. Proc. art. 39.14.

48. 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

49. The court of appeals states that "[t]he significance of the presumption courts afford prosecutors carries over to a defendant's request for an evidentiary hearing *or* discovery. ... [I]n light of the presumption of prosecutorial regularity, a defendant who claims his constitutional rights were violated by some form of prosecutorial misconduct must make out a prima facie case of his claims before he is entitled to an evidentiary hearing *or* discovery. ... Indeed, the standard for obtaining discovery on claims like selective or vindictive prosecution requires some evidence tending to show the existence of the essential elements of the claimed violations." *Hill* at *5.

50. 517 U.S. at 458, 116 S.Ct. 1480.

51. *Id.* at 459, 116 S.Ct. 1480.

52. *Id.* at 461, 116 S.Ct. 1480.

53. *United States v. Armstrong*, 21 F.3d 1431, 1436 (1994).

54. 517 U.S. at 458, 116 S.Ct. 1480.

to examine government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims.[55] The Supreme Court reasoned that, if discovery is ordered to allow a defendant to support a selective prosecution claim,

> the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.[56]

The Supreme Court concluded that the threshold showing, consistent with its equal protection case law, is made when the defendant produces "some evidence" that similarly situated defendants of other races could have been prosecuted, but were not.[57] Holding that the defendant had not met this threshold requirement under the federal discovery statute, the Supreme Court reversed the trial court's dismissal of the case because it was based on the Government's valid refusal to comply with the federal court's discovery order.

The court of appeals decided that the *Armstrong* standard "for obtaining discovery on claims like selective or vindictive prosecution" controlled whether the trial court erred by holding an evidentiary

hearing on Hill's motion to dismiss without requiring Hill to produce " 'some evidence tending to show the existence of the essential elements' of the claimed violations."[58] The court of appeals cited to *Armstrong* to support its conclusion that, the trial judge erred in granting Hill an evidentiary hearing because Hill failed to "make a prima facie showing for his alleged constitutional claims with evidence capable of dispelling the presumption that the prosecution of him was in good faith and in compliance with the Constitution."[59]

We hold that the court of appeals misapplied *Armstrong* by relying on it in the context of whether the trial court erred in holding a pretrial evidentiary hearing. The court of appeals did not expressly nor fully address the issue of whether the trial court erred because its dismissal of Hill's indictments was, in essence, the equivalent of a sanction against the State for failing to comply with discovery. Despite the parallels drawn between the facts of this case and the facts in *Armstrong*, we do not agree that *Armstrong* controls the issue presented to this Court, which was whether the trial court erred in holding a pretrial evidentiary hearing.

The State and the court of appeals cite to several other federal cases holding that a defendant is not automatically entitled to an evidentiary hearing in order to make out a prima facie showing of selective prosecution. However, these cases approach this issue from the standpoint of a trial court's denial of an evidentiary hearing. None of them hold that the State has a right to prevent a trial court from holding

---

55. *Id.* at 462, 116 S.Ct. 1480 (citing FED. R. CRIM. PROC. 16).

56. 517 U.S. at 468, 116 S.Ct. 1480.

57. *Id.* at 469, 116 S.Ct. 1480.

58. *Hill* at *5. (citing *Armstrong*, 517 U.S. at 468, 116 S.Ct. 1480).

59. *Id.* (citing *Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480).

a pretrial evidentiary hearing requested by a defendant.

In *Wade v. United States*,[60] the petitioner complained that the trial court refused his request, without a hearing, to reduce his sentence to below the minimum set forth in the federal sentencing guidelines manual as a reward for his substantial assistance to the Government. The Supreme Court stated that a defendant seeking such relief must make a substantial threshold showing before he is even entitled to an evidentiary hearing on that federal complaint. That holding is not controlling of the issue presented for our review.

In *United States v. Webster*,[61] the Fifth Circuit stated that, before being entitled to an evidentiary hearing, a defendant must first present facts sufficient to create a reasonable doubt about the constitutionality of his prosecution resulting from selective prosecution. However, the issue of whether the trial court erred in holding a pretrial hearing was not an issue in *Webster*.

The court of appeals also cited to *In re United States*[62] in support of its conclusion that "there is an evidentiary threshold that must be met by the defendant before he is entitled to an evidentiary hearing on his claims that he was prosecuted in violation of his constitutional rights." However, as in *Armstrong*, the issue in *In re United States* was whether the district court erred

in enforcing discovery orders in a federal death penalty case. The Fifth Circuit held that the court's "inspecific orders afforded no boundaries on discovery, and in effect compelled the Government to volunteer information (as opposed to responding to a request by [defendant]), contrary to *Armstrong* and to Federal Rule of Criminal Procedure 16."[63] The Fifth Circuit vacated the court's discovery orders and remanded the case "to proceed as expeditiously as possible."[64]

In *United States v. Jennings*,[65] the court held that bare generic allegations concerning the selective prosecution of racial groups were insufficient to justify an evidentiary hearing. In *Jennings*, the court held that it was not an abuse of discretion for the trial court to not conduct a hearing. Again, this conclusion does not mean that the inverse would be true—that under the same set of facts it would be an abuse of discretion to conduct a hearing.[66]

## CONCLUSION

■■■ We hold that it was within the trial court's discretion to conduct a pretrial evidentiary hearing on Hill's motion to quash and dismiss. Article 28.01 does not limit the trial court's discretion to hold such a hearing based on the defendant meeting a certain threshold evidentiary requirement. The federal cases cited by the

**60.** 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992).

**61.** 162 F.3d 308, 334 (5th Cir.1998).

**62.** 397 F.3d 274 (5th Cir.2005).

**63.** *Id.* at 285.

**64.** *Id.* at 287.

**65.** 724 F.2d 436, 445–46 (5th Cir.1984).

**66.** In *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (overruled on other grounds by *Keeney v. Tamayo–Reyes*,

504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)), the Supreme Court recognized that a District Court retains the power to hold a pretrial evidentiary hearing even though it is not required to hold a pretrial hearing. *See also Pagan v. Keane*, 984 F.2d 61, 64–65 (2d Cir.1993) (remanding case to District Court, reasoning that, although petitioner was not entitled to an evidentiary hearing due to an inadequate showing, the District Court still retained "ample" discretionary authority to grant one)).

court of appeals and urged by the State are not controlling of this issue, nor do they persuade us to hold otherwise.[67] We reverse the judgment of the court of appeals.[68]

Because the court of appeals did not reach the State's two remaining issues challenging the trial court's dismissal of Hill's indictments, we remand this case to the court of appeals to address these issues.[69]

---

67. In addition, this Court is not bound by cases interpreting federal law. *Osbourn v. State*, 92 S.W.3d 531, 536 n. 4 (Tex.Crim.App. 2002) ("[W]e are not bound by federal court decisions . . . ."); *Wilson v. State*, 71 S.W.3d 346, 351, n. 5 (Tex.Crim.App.2002); *Ex parte Graves*, 70 S.W.3d 103, 124, n. 12 (Tex.Crim. App.2002) (Price, J. dissenting).

68. In granting Hill's petition for discretionary review, we agreed to determine what *is* required to merit a hearing on a defendant's pretrial claim of prosecutorial misconduct. Upon reflection, however, that particular issue would be more appropriately addressed in the context of a defendant's appeal from a trial court's denial of a pretrial hearing, rather than in the context of the State's appeal from a trial court's granting of a hearing. We therefore decline to speculate on what would have been required for Hill to have been entitled to a pretrial evidentiary hearing on his claim of prosecutorial misconduct when the trial court had already granted Hill's request for a pretrial hearing. To the extent that we agreed to address that issue, we dismiss it as improvidently granted.

69. We note that the court of appeals did cite to case law setting out what would be required for Hill to prove the claims raised in

his motion to dismiss. *See Gawlik v. State*, 608 S.W.2d 671, 673 (Tex.Crim.App.1980) (finding that, to establish a prima facie case of selective prosecution, the defendant must show (1) that the government has singled the defendant out for prosecution even though the government has not proceeded against others similarly situated; and (2) the government's discriminatory selection is invidious and based on impermissible considerations.) Moreover, the court of appeals properly noted that "the dismissal of an indictment is 'a drastic measure only to be used in the most extraordinary circumstances.'" *State v. Mungia*, 119 S.W.3d 814, 817 (Tex.Crim.App. 2003) (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex.Crim.App.1995). However, the court's ultimate holding was based only on its resolution of the State's first two issues. Therefore, a remand is necessary. *See, e.g., Carmona v. State*, 941 S.W.2d 949, 954–55 (Tex.Crim.App.1997) (finding remand necessary because the court of appeals did not adequately address the ground raised by the appellant); *Williams v. State*, 790 S.W.2d 643 (Tex.Crim.App.1990) (finding remand necessary because the court of appeals inadequately addressed points raised on appeal).