

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00200-CR

---

DANIEL MANUEL CASTORENA                                APPELLANT
A/K/A DANIEL CASTORENA

V.

THE STATE OF TEXAS                                         STATE

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1385851D

----------

## MEMORANDUM OPINION[1]

----------

With the trial court's express permission,[2] Daniel Manuel Castorena appeals from his plea-bargained conviction and six-year sentence for aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. R. App. P. 25.2(a)(2)(B), (d).

2011). Appellant raises a single issue: "Whether the trial judge, abandoning his role as a neutral and detached jurist to advise the defendant on the merits of his defense, deprived the defendant of his due process rights?" We affirm.

A grand jury indicted appellant for engaging in organized criminal activity by committing aggravated assault with a deadly weapon, a first degree felony with a punishment range of five to ninety-nine years' confinement or confinement for life. *See id.* §§ 12.32(a), 22.02(b) (West 2011), § 71.02(a), (b) (West Supp. 2016). On March 2, 2015, appellant signed written plea admonishments agreeing to plead guilty, without a recommendation from the State, to the lesser-included second degree felony of aggravated assault with a deadly weapon, which carries a punishment range of two to twenty years' confinement. *Id.* §§ 12.33(a), 22.02(b) (West 2011). The trial court ordered a presentence investigation report (PSI).

At the sentencing hearing on April 10, 2015, the trial court began to state a "[s]hort procedural history" on the record but then went off the record. After going back on the record, the trial court stated as follows:

> THE COURT: . . . Defendant was originally indicted for the offense of organized crime by participating in a felony aggravated assault deadly weapon case. State indicated that if the Defendant entered a plea of guilty, accepted responsibility for participating, they would agree to let him plea to the underlying offense of aggravated assault with a deadly weapon, second-degree felony. Defendant agreed to do the same[ and] entered an open plea on that date.
>
> Prior to the plea, several legal documents were prepared in open court, executed and sworn in open court in the presence of the parties and the judge. They're styled Written Plea Admonishments.

2

They were file-marked March 2nd at 3:25 in the afternoon. In those documents there are certain notations the Court made at the time they were executed, sworn and filed, including that it would be a plea to a second-degree felony, to agg assault, deadly weapon, that it was an open plea with no recommendation, meaning the full range of punishment is available, from deferred to 20 years and everything in between, that it was a 3(g) offense, and in the event of serving time, the consequences of a minimum of two years or half of any sentence of four years or more.

And then there's a sworn judicial confession where the Defendant swore his true, legal name was Daniel Manuel Castorena and that he was 19 years of age, understood the charges, never been convicted of a felony before, but accepted legal and factual responsibility for the offense of aggravated assault, deadly weapon.

And after discussing his rights, his admonitions, those required by law, statutory and constitutional, I was convinced that he was competent and he could and did make a free and voluntary decision to waive his rights and enter a guilty plea. And I ordered a presentence investigation to be conducted, ordered him to report weekly until the sentencing was concluded.

And I have now, not now, but I did receive a completed presentence investigation report back around March the 23rd or 24th. The parties were notified and should have been able to obtain their copies in that same timeframe.

. . . .

THE COURT: Do both parties agree to the short factual summary that I gave as to how all the documents and proceedings happened prior to today when there was no court reporter present?

MR. ROSS: Agreed.

MS. VIGIL: Defense agrees.

. . . .

THE COURT: . . . Prior to proceeding, I have discussed this off the record with the attorneys. Contained on page three of the PSI is what I will call an official interview summary of an interview

3

between the Defendant and a Fort Worth officer concerning the facts of the event which gave rise to this charge. And on page four and on the top of page five there is an official version given in writing and verbally, clarified, of the facts of this event, from the Defendant's perspective, given to the Community Corrections & Supervision officer assigned to the PSI unit. And on their face they potentially could raise an issue of self-defense, just read by a layperson, as an explanation for the offense, a layperson who does not understand the legal ramifications of provoking the difficulty and not then being able to claim self-defense. You can't tell someone draw or you'll shoot them and they draw faster than you and -- or slower than you and claim self-defense because you forced their hand.

Ms. Vigil, you have addressed these candidly with the Court and said you've addressed these issues candidly with your client before the decision to plead guilty or have a trial. Are you comfortable that your client understands and understood the law of self-defense and the limitations thereon, even according to his version of events, based upon the initial events he described happening and the great distance and time and location between the incident which caused his original concern and the time of the stabbing involv[ed] in this offense?

MS. VIGIL: Yes, Your Honor, I have discussed this issue of self-defense with my client numerous times and it is my opinion that he understood. And he has always advised me that he did not wish to pursue that issue or pursue a trial.

THE COURT: And he understands the instructions given to a jury that you cannot provoke the difficulty and claim self-defense unless you clearly abandon any encounter and then are essentially pursued. And that's clearly not the facts from either side's version in this case. And if his version is true based on the law that you've researched, I've researched and the State's researched, he's comfortable, he still wants his plea to stand, he still wants to go forward with the sentencing and not withdraw his plea just because the lay innuendo of self-defense had there been -- were there no provoking the difficulty limitation, if we went to the microcosm of his version and what happens seconds before the stabbing, it would be self-defense in an average layperson's mind without the Paul Harvey rest of the story.

4

And he still wishes to persist in his plea and for this hearing to go forward today; is that correct?

MS. VIGIL: That's correct, Your Honor. And I have discussed that yet again today.

. . . .

MS. VIGIL: And that his final wish is to proceed.

THE COURT: All right. Daniel Castorena, you understand what we've been saying here?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand your version in the PSI -- I'll just be blunt, there's a section of, Well, I wasn't sure if he was going for a weapon and so I stabbed him. But that occurred after a many-mile vehicle pursuit that went on and on before you went up to the vehicle. You did admit, in your version of punching him, and then saw his hand going toward a weapon. And if your version were testified to by St. Peter and the angels, you have a right to prevent an assault, but you don't have the right to use force to recover property after it's over with. You call 9-1-1 and make a report.

Do you understand?

THE DEFENDANT: Now I do, sir.

THE COURT: Right. And, again, ignorance of the law is not a defense. And I'm sorry it's just now you do because you've been given numerous opportunities to understand how the system works if people call 9-1-1 and how there is a prompt police response to request for assistance.

THE DEFENDANT: Yes, sir.

THE COURT: Based on your own personal history, you should have understood that better than most.

All right. And so you still want to plead guilty, you still want a sentencing hearing today, you don't want 12 people to hear your case and try to fly [a] self-defense claim that you and your lawyer

5

think will not fly under the law, if they follow the law; is that correct, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. All right. You can be seated. Thank you. Then we'll keep going.

I did indicate if there were an issue of a legal claim of self-defense, I would let the Defendant withdraw his plea. To their credit, the State said if there is a legal claim of self-defense, we will not oppose. And Defense Counsel assured both of us that if the Defendant's version were true, based on the law of provoking the difficulty and the time/space continuum between them, there may have been a right to self-defense that -- to pursue a matter over miles and roads and turns and distance and time, that it had long expired under the reasonable man's standard. And so we'll go forward.

All right. Anything historical that either side needs to put in the record before we proceed, since the court reporter had been waived at the time of the original hearing but is present today because there will be offered evidence?

MR. ROSS: No. I think you've covered it all, Your Honor.

MS. VIGIL: Nothing further, Your Honor.

In his issue, appellant contends that by describing on the record aspects of the plea negotiations that had occurred off the record, and by questioning appellant regarding whether he understood why it would be difficult to prove self-defense according to his version of events should he proceed to trial, the trial judge "abandon[ed] his role as a neutral and detached jurist to advise the defendant on the merits of his defense, [and] deprived [him] of his due process rights." Included within appellant's issue are arguments that (1) the trial judge

6

usurped the role of counsel to develop a record by "mak[ing] a lengthy announcement to create a record" of what had happened off the record and (2) the judge improperly advised appellant "of the strength of possible [g]uilt/innocence defensive theories."

To the extent appellant's complaint is that the trial judge improperly intruded upon or interfered with the plea process, thereby influencing appellant's plea, he did not preserve this complaint by raising it in the trial court. *See Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009) (holding that complaint regarding improper interference of trial judge with plea-bargaining process is not systemic and must be raised in the trial court to be preserved for appeal);[3] *see also Guerrero v. State*, Nos. 01-13-00821-CR, 01-13-00822-CR, 2015 WL 2266247, at *2 (Tex. App.—Houston [1st Dist.] May 14, 2015, pet. filed) (mem. op., not designated for publication) (holding complaint arising from similar circumstances not preserved); *Martinez v. State*, Nos. 05-13-01281-CR, 05-13-01282-CR, 05-13-01283-CR, 2014 WL 5804119, at *3 (Tex. App.—Dallas Nov. 10, 2014, no pet.) (mem. op., not designated for publication) (same).

To the extent that appellant contends that he has shown structural error in that the trial judge's comments indicate appellant was deprived of a neutral and

---

[3]Appellant cites mostly federal law, including Rule 11 of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 11. But we are bound by the Texas Court of Criminal Appeals's holding that such complaints must be preserved in the trial court. *See State v. Hill*, Nos. PD-0019-15, PD-0020-15, PD-0021-15, PD-0022-15, 2016 WL 5113974, at *16 & n.27 (Tex. Crim. App. Sept. 21, 2016); *Hailey v. State*, 413 S.W.3d 457, 489 (Tex. App.—Fort Worth 2012, pet. ref'd).

7

detached tribunal,[4] we conclude and hold that, in the context of the entire record, there has been no such showing. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). As in *Brumit*, nothing in this record indicates that the trial judge was biased against appellant or in favor of the State or that the trial judge predetermined a sentence. *Id.* at 645. Regardless of the advisability of the trial judge's comments, they evidence his concern that appellant's post-guilty-plea version of events in the PSI interview indicated that appellant might have wished to withdraw his guilty plea or that his plea may not have been knowingly, intelligently, and voluntarily made. The trial judge is charged with ensuring that the record reflects that the plea meets those requirements. *See* Tex. Code Crim. Proc. Ann. art. 26.13 (West Supp. 2016); *Davison v. State*, 405 S.W.3d 682, 690 (Tex. Crim. App. 2013). Although it appears the trial judge had read the PSI, the record indicates he did not receive it until several weeks after appellant pled guilty in accordance with his agreement with the State; thus, the trial judge's comments could not have affected the plea at the time it was made. Additionally, after making the comments, the trial judge proceeded to hear evidence relevant

---

[4]*See Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) ("We need not decide today whether an objection below is required to preserve an error of this nature on appeal because the record here does not reflect partiality of the trial court or that a predetermined sentence was imposed."); *Avilez v. State*, 333 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("Assuming without deciding that Avilez's complaint, if valid, implicates the type of systemic error that we may address for the first time on appeal, we consider whether the trial court's actions violated Avilez's due process right to an impartial judge.").

to sentencing; none of the trial court's remarks or clarifying questions during the rest of the proceeding indicate that the judge was neither neutral nor detached. *See Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978) ("It is clear from the record that the questions addressed to the witnesses involved were for the purpose of clarifying an issue before the court and that the court during such questioning maintained an impartial attitude. Such is permissible.").

We therefore overrule appellant's sole issue and affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 1, 2016