**Opinion issued August 6, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-23-00037-CR

———————————

**PATRICIO HERNANDEZ, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 26th District Court**
**Williamson County, Texas[1]**
**Trial Court Case No. 20-0937-K26**

---

## MEMORANDUM OPINION

A jury convicted Patricio Hernandez, Jr. of the felony offense of aggravated

sexual assault of a child and sentenced him to 28 years' confinement. On appeal,

---

[1] Per its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 22-9115 (Tex. Dec. 20, 2022); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases); TEX. R. APP. P. 41.3.

Hernandez complains that the trial court erred in allowing testimony from multiple outcry witnesses and hearsay evidence. We affirm.

## Background

Mary, the complainant, was three years old when Hernandez started dating her mother Anne.[2] Hernandez had three children from a prior relationship, and Anne had two children, including Mary, from a prior relationship. Upon getting married, the couple and their children lived together in Williamson County from 2009 until their divorce in 2018. Mary saw Hernandez as her father rather than as a stepfather until changes in his behavior altered their relationship.

Mary testified that, when she was around four or five years old, Hernandez entered her bedroom and sat on her bed. She pretended to be asleep because she did not want to get in trouble for being up late. He touched her chest and then slipped his hand under her pajama bottoms to touch her over her underwear. When Mary turned to look at Hernandez, he stopped and stood up. He warned her not to tell anyone or he would hurt her. In another incident, Mary stated that Hernandez entered her bedroom smelling of alcohol and knelt beside her bed while she pretended to be asleep. Hernandez touched her chest and then inserted a finger into her vagina. Mary

---

[2]     We use pseudonyms to refer to the child complainant and her family members. *See* TEX. CONST. art. 1, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.10(3).

opened her eyes and told him to stop because it hurt. Again, he warned her not to tell anyone or he would hurt her and her mom.

Mary did not tell anyone what happened for many years because she felt hopeless and disgusted. She also felt that she could not tell her mother that a man her mother loved and married did these things to her. Mary disclosed the abuse in February 2020, when she was 15 years old. For some time before the outcry, the memories of her abuse prevented Mary from eating or sleeping properly. Exhausted, she began crying in class, at which point her teacher recommended she see the school counselor.

Mary spoke with counselor K. Gilbert for approximately 10 minutes about the abuse. Gilbert informed the school resource officer and made a required report. But Gilbert did not take notes and could not remember any details of Mary's outcry at trial. Resource officers attempted to further question Mary, but she was too distressed to speak with them. Within the next few days, an investigator with the Department of Family and Protective Services informed Anne that her daughter had alleged child abuse and was scheduled for an interview at the Williamson County Children's Advocacy Center (CAC). In March, Anne took Mary to the CAC where she met with forensic examiner C. Bradshaw and forensic nurse, also known as a Sexual Assault Nurse Examiner (SANE), D. Kleypas.

The trial court held a hearing to determine who was the appropriate outcry witness. Hernandez argued that Gilbert was the appropriate outcry witness because she was the first person Mary disclosed the abuse to. Gilbert was examined during the hearing and confirmed that she could not remember the details of her conversation with Mary and did not take any notes.[3] The State responded that Gilbert's inability to remember meant that Bradshaw was the appropriate outcry witness because the "first person" is the first adult who can remember and relate the child's statements at trial, not necessarily the first person the child spoke to. The trial court designated Bradshaw as the outcry witness over Hernandez's objection.

Bradshaw confirmed that she and Mary were the only two people in the room during the recorded interview. Bradshaw explained her interview process in which she first builds a rapport with the child then asks open-ended questions so that the child may lead the discussion. During their hour and a half long interview, Mary tearfully recounted the details of her stepfather's abuse over the years. Like Mary's own testimony, Bradshaw testified that Mary's stepfather, Hernandez, abused her until she was nine years old. Mary told Bradshaw about the incident where Hernandez inserted his finger into her vagina. However, while Mary told Bradshaw

---

[3]     In her forensic interview, Mary mentioned that Gilbert took notes. But Gilbert testified that she did not take any notes.

about approximately five incidences of abuse, Mary could only recall two of them at trial.

Forensic nurse Kleypas testified next and explained the examination process. First, she performs a medical screening to ensure the child's physical health and obtains a history of what happened to prepare a treatment plan. Next, she performs a forensic exam to collect any evidence of alleged abuse. Kleypas further explained that there are two types of exams in these cases—acute and nonacute. Acute examinations occur within 120 hours of the alleged sexual abuse. This window of time provides an opportunity to collect DNA evidence through swabs or clothing and to look for any signs of trauma by an examination of the genital area. Nonacute exams occur after this 120-hour period and do not involve DNA collection because there is little potential of finding any evidence. Kleypas also explained that, in over 95 percent of nonacute exams, she does not note any injury to genital tissue because of its ability to heal quickly.

Mary underwent a nonacute examination because years had passed since the abuse. As such, Kleypas's examination focused on a general health screening and obtaining Mary's account of what happened. Because Mary was distressed and did not want to undress, Kleypas did not perform a genital examination. Kleypas noted Mary's retelling of events in her exact words and read from the SANE report at trial. Mary told Kleypas that her stepfather, Hernandez, touched her vagina and her breasts

from when she was five to nine years old. Mary recounted the incident where Hernandez inserted his finger into her vagina, causing her pain and discomfort when urinating. She also mentioned that he warned her not to tell anyone or he would hurt her or divorce her mom, which would leave them homeless. Hernandez objected to Kleypas's recounting of Mary's narrative history on hearsay grounds. He argued that, because this was a nonacute exam, there was no evidence to gather, and the examination was to build a stronger case against Hernandez rather than for medical diagnosis. The trial court overruled the objection under the medical diagnosis exception to the hearsay rule.

The next several defense witnesses testified to Hernandez's character and his close relationship with Mary. At the end of witness testimony, the State and Hernandez rested. Both sides gave closing arguments, and the court's charge was read to the jury. The jury returned a guilty verdict on the charge of aggravated sexual assault of a child. Hernandez was sentenced to 28 years' confinement. This appeal followed.

## Testimony from Outcry Witness Bradshaw

In his first issue on appeal, Hernandez contends that the trial court abused its discretion by designating the forensic examiner, Bradshaw, and not Mary's school counselor, Gilbert, as the outcry witness.

**A.      Standard of Review**

A trial court has broad discretion to admit outcry witness testimony. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Koury v. State*, 684 S.W.3d 537, 546 (Tex. App.—Austin 2024, pet. ref'd). A trial court abuses its discretion when it acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). In other words, we will not reverse the trial court's decision to admit outcry witness testimony unless it falls outside the zone of reasonable disagreement. *Buentello v. State*, 512 S.W.3d 508, 516–17 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

The erroneous admission of testimony is non-constitutional error that must be disregarded unless it affected the defendant's substantial rights. *See Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *see also* TEX. R. APP. P. 44.2(b). This means that "an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Therefore, we will not overturn a criminal conviction for non-constitutional error if, after examining the record, we have a fair assurance that the error did not influence, or only slightly influenced, the jury. *Id.*; *see also Barshaw*, 341 S.W.3d at 93.

**B.     Applicable Law**

Hearsay is inadmissible unless it falls into one of the exceptions in Rules of Evidence 803 or 804 or is allowed by "other rules prescribed under statutory authority." TEX. R. EVID. 802. One of these "other rules" is Article 38.072 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 38.072. By enacting this statute, the legislature sought to strike a balance "between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children." *Garcia*, 792 S.W.2d at 91; *see also Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005) (holding that, while hearsay statements are generally inadmissible, they may be admitted "when public policy supports their use, and the circumstances surrounding the making of those statements pedigree their reliability").

Article 38.072 of the Code of Criminal Procedure governs the admissibility of outcry statements in the prosecution of aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. art. 38.072, § 1 (2011).[4] This statute applies to "statements that describe the alleged offense" and were made "by the child . . . against whom the offense was allegedly committed" and "to the first person, 18 years old or older,

---

[4]     We apply and reference the version of the statute that was in effect at the time of trial in 2022. *See* Acts 2023, 88th Leg., ch. 93 (S.B. 1527), § 3.01, eff. Sept. 1, 2023 (evidence admitted in criminal proceedings that commence before Sept. 1, 2023, is governed by the former law in effect at that time).

other than the defendant, to whom the child made a statement about the offense." *Id.* art. 38.072, § 2(a)(1)–(2). To be admissible under Article 38.072, the outcry testimony must be elicited from the first adult to whom the child described the alleged offense in some discernable manner. *See Garcia*, 792 S.W.2d at 91 (holding that the outcry witness must be the first adult "to whom the child makes a statement that in some discernible manner describes the alleged offense"). To be a proper outcry statement, the child's statement to the witness must "be more than words which give a general allusion that something in the area of child abuse was going on." *Id.*; *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).

## C.   Analysis

School counselor Gilbert was the first adult to whom Mary disclosed the abuse. Under the plain meaning of "first person" under Article 38.072, Gilbert would be the outcry witness. But Gilbert testified at trial that she remembered nothing from her meeting with Mary and took no notes from which she could refresh her memory. She maintained that she is not required to document outcries and that she followed her procedures by making a report to the Department of Family and Protective Services and involving law enforcement through the school resource officer. Because of Gilbert's inability to recall the details of Mary's disclosure, the State contends that the trial court correctly designated forensic examiner Bradshaw as the proper outcry witness.

9

### 1. *Foreman v. State*

The State relies on *Foreman v. State*, 995 S.W.2d 854 (Tex. App.—Austin 1999, pet. ref'd). In *Foreman*, the complainant first disclosed her abuse to her mother and stepfather while on vacation. *Id.* at 857. But her mother and stepfather had no memory of the conversation. *Id.* In their stead, the trial court designated the complainant's counselor as the outcry witness. *Id.* On appeal, Foreman argued that the trial court erred in admitting the counselor's testimony under Article 38.072 because the complainant first told her mother and stepfather about the offenses. *Id.*

The *Foreman* court interpreted the precise meaning of "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense" under Article 38.072. *Id.* at 858–59. In doing so, the court relied on the Texas Court of Criminal Appeals' decision in *Garcia v. State*, which held in pertinent part:

> The portion of the statute catering to the hearsay prohibition demands that only the "first person" is allowed to testify. But the societal interest in curbing child abuse would hardly be served if all that "first person" had to testify to was a general allegation from the child that something in the area of child abuse was going on at home. Thus, we decline to read the statute as meaning that any statement that arguably relates to what later evolves into an allegation of child abuse against a particular person will satisfy the requisites of [Section] 2(a)(2). The statute demands more than a general allusion of sexual abuse.

*Id.* at 858 (quoting *Garcia*, 792 S.W.2d at 91).

10

The *Foreman* court pointed out that several cases have applied *Garcia*'s holding in designating the proper outcry witness. *See id.* at 858–59; *see also Hinds v. State*, 970 S.W.2d 33, 35 (Tex. App.—Dallas 1998, no pet.) (holding that mother was the proper outcry witness where complainant first told counselor in general terms but gave mother more detail); *Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding that CPS worker was the proper outcry witness because, although complainant first told her school counselor of the abuse, there was no evidence she gave counselor the details of the abuse). Then, relying on *Garcia*, the court held:

> On the same basis, the societal interest in curbing child abuse would not be served if we interpreted the statute to require that the "first person" could only be the person to whom the child made outcry even though that person did not hear, did not remember, or did not understand what the child was saying. We interpret the statute to mean that the "first person" refers to the first adult who can remember and relate at trial the child's statement that in some discernible manner describes the alleged offense.

*Foreman*, 995 S.W.2d at 859.

Hernandez contends that *Foreman* was wrongly decided. He argues that Article 38.072 clearly states that the proper outcry witness is the "first person over 18" to whom the child discloses the alleged abuse, and that the second person cannot become the "first person" merely because the latter has a lapse in memory. He also argues that *Foreman*'s interpretation of the statute invites a new issue by requiring courts to determine whether the substitute for the "first person" adequately

11

remembers the outcry. According to Hernandez, this "judicially-created amendment" defeats the statute's purpose of ensuring the reliability of the child's first outcry statement. For these reasons, Hernandez urges the Court to disregard *Foreman*.

Hernandez's appeal was transferred to this Court from our sister court in Austin. We are therefore obligated to follow its precedent. *See* Tex. R. App. P. 41.3 (transferee court must follow transferor court's jurisprudence); *see also Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002). In doing so, we must conclude that the trial court did not err by allowing Bradshaw to testify as the outcry witness. Finding no error in the designation of the outcry witness, we need not reach the issue of harm. *See* TEX. R. APP. P. 47.1. We overrule Hernandez's first issue.

**Complainant's Statements to Nurse Examiner Kleypas**

Next, Hernandez challenges the trial court's decision to overrule his hearsay objection to testimony from forensic nurse Kleypas about statements Mary made during the examination. Hernandez asserts that Kleypas's testimony did not meet the hearsay exception for medical diagnosis because the examination was performed solely for law-enforcement purposes.

## A.  Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *see also Koury*, 684 S.W.3d 537 at 542. We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). An abuse of discretion occurs when the trial court's decision falls outside the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 83.

## B.  Applicable Law

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is ordinarily inadmissible. TEX. R. EVID. 801(d), 802. However, under Rule 803(4) of the Texas Rules of Evidence, a statement that is "made for—and is reasonably pertinent to—medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause" is excepted from the hearsay rule. TEX. R. EVID. 803(4).

Rule 803(4) is premised on the patient's strong and selfish motive to tell the truth to receive proper medical diagnosis or treatment. *See Taylor v. State*, 268 S.W.3d 571, 580 (Tex. Crim. App. 2008). This motive guarantees sufficient trustworthiness to allow an exception to the general prohibition against hearsay. *Id.* The proponent of the evidence must show that: (1) the out-of-court declarant was

aware that the statements were made for the purpose of medical diagnosis or treatment and the proper diagnosis or treatment depends upon the veracity of such statements; and (2) the particular statement proffered is pertinent to treatment or diagnosis. *Id.* at 589–91.

## C. Analysis

Hernandez focuses on Mary's lack of symptoms, medical concerns, or physical conditions. He contends that the absence of any treatable injuries indicate Mary was not presenting herself for medical treatment or diagnosis. He also notes that Kleypas did not perform a genital exam or instruct Mary to get undressed. Instead, Mary's statements served only to create another hearsay witness through Kleypas. According to Hernandez, Kleypas acted as a law enforcement officer to bolster Mary's case by repeating the outcry statement and identification of Hernandez. The State responds that Kleypas's testimony showed the medical nature of her examination. The State maintains that, although Kleypas did not treat or reveal any physical conditions or injuries, Mary's examination was medical in nature.

The record supports a conclusion that Mary's statements to Kleypas about how and by whom she was abused were made for the purpose of medical diagnosis and treatment. At trial, Kleypas stated her examinations involve obtaining a medical history, performing a medical screening exam, conducting a genital exam, and noting the history of what happened to guide her treatment plan. Because years

14

passed between the abuse and Mary's outcry and examination at the CAC, Kleypas conducted a nonacute sexual assault examination. Kleypas decided not to perform a genital examination because Mary was uncomfortable getting undressed. Kleypas said she does not perform the exam if it risks further traumatizing her patient. Additionally, Kleypas deemed the genital exam not necessary because, in over 95 percent of nonacute exams, she notes no findings because of how quickly such injuries heal.

In the narrative history, Mary identified her stepfather, Hernandez, as the abuser and stated that he inserted a finger into her vagina and touched her breasts when she was five to nine years old. She also told Kleypas that Hernandez threatened to hurt her if she told anyone. Kleypas explained how the patient history is vital for her to deduce what happened to their body and determine the type of treatment she must provide. Kleypas also testified that she must know where and by whom the child was assaulted to ensure their safety by not discharging the patient to the alleged abuser. Based on this testimony, we cannot say that the trial court abused its discretion when it overruled Hernandez's hearsay objection and allowed Kleypas to testify pursuant to Rule 803(4).

"The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed. Thus, statements describing acts of sexual abuse are pertinent to the victim's medical

diagnosis and treatment." *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd); *accord Turner v. State*, 924 S.W.2d 180, 182 (Tex. App.—Eastland 1996, pet. ref'd); *see also Macias v. State*, 776 S.W.2d 255, 259 (Tex. App.—San Antonio 1989, pet. ref'd) (holding that Rule 803(4) "has been interpreted to allow a physician to testify to a child's statements relevant to the external event causing an injury"). Kleypas's testimony and report demonstrate that Mary's SANE examination was for the purpose of medical diagnosis and treatment. The fact that the examination did not result in a diagnosis or a treatment plan does not change its nature. *See Chima v. State*, No. 14-22-00610-CR, 2024 WL 1571849, at *6 (Tex. App.—Houston [14th Dist.] Apr. 11, 2024, no pet. h.) (mem. op., not designated for publication) (holding that SANE testimony fell under Rule 803(4) medical exception to hearsay even though the examination did not lead to diagnosis or treatment plan).

It is true that SANE nurse examinations gather evidence routinely used at trial, such as the identity of the abuser and the nature of the assault. But Texas courts have found identity to be pertinent to medical diagnosis and treatment in cases of child sexual assault. *Tissier v. State*, 792 S.W.2d 120, 125 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (citing *United States v. Renville*, 779 F.2d 430, 437–38 (8th Cir. 1985) (holding that child abuse victim's identification of the abuser during medical examination can be reasonably pertinent to diagnosis or treatment)); *accord Guzman v. State*, 253 S.W.3d 306, 308 (Tex. App.—Waco 2008, no pet.).

16

Admissibility of an identification to a mental health professional was addressed at length in *Taylor v. State*. In *Taylor,* The Texas Court of Criminal Appeals recognized that several Texas appellate courts have addressed the admissibility of child-victim statements to treating physicians. *See Taylor*, 268 S.W.3d at 584. The Court emphasized that the perpetrator's identity can be pertinent to diagnosis or treatment to "discover the extent of the child's 'emotional and psychological injuries'—particularly when the perpetrator might be a family or household member and it is important to remove the child from the abusive environment." *Id.* at 590 (citing *Renville*, 779 F.2d at 438).

The Austin Court of Appeals has also adopted this expansion of the 803(4) exception to hearsay. In *Fleming v. State*, the court held that a child complainant's statements to a pediatrician and mental health therapist describing the offense and identifying the abuser were admissible because they were reasonably pertinent to medical diagnosis and treatment. 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref'd). ("[U]nlike ordinary medical problems, the treatment of child abuse includes removing the child from the abusive setting. Thus, the identity of the abuser is pertinent to the medical treatment of the child.").[5]

---

[5] Again, because this is a transfer case, we are bound by *Fleming*. *See* TEX. R. APP. P. 41.3.

In this case, Mary told Kleypas that her stepfather, Hernandez, had assaulted her. Kleypas testified that disclosing the perpetrator's identity is important to ensure the child's safety when discharging them. This follows the reasoning in *Taylor* and *Fleming*. Kleypas's report also indicated that Mary was suffering from nightmares, difficulty eating, and suicidal ideations. As discussed in *Taylor*, the identity of a perpetrator as a close family member can inflict extensive psychological damage. *See Taylor*, 268 S.W.3d at 590. This further links Hernandez's identity to Kleypas's potential medical diagnosis and treatment.

We hold that the trial court did not abuse its discretion in overruling Hernandez's hearsay objection to nurse Kleypas's testimony relating Mary's statements identifying Hernandez and describing the event. We overrule Hernandez's second issue.

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).

18