COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-23-00034-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 327th Judicial District Court |
| | § | |
| ISAIAS BURCIAGA | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20220D03763) |
| | § | |

## DISSENTING OPINION

In my view, this case turns on the doctrine of federal preemption—something we can and should opine on at this pretrial juncture based on the undisputed evidence in the record.[1] The State is prosecuting Burciaga expressly because he was transporting and concealing undocumented noncitizens who were allegedly in the U.S. illegally. Federal law occupies the field of prosecuting individuals who transport and conceal undocumented noncitizens who are in the U.S. illegally. I would therefore conclude that the portion of the Texas Human Smuggling Statute, as applied to

---

[1] Because I believe that Burciaga's prosecution is preempted by federal law, I do not address his vagueness or Fourth Amendment claims.

Burciaga's case, is at least field-preempted by federal immigration law and affirm the trial court's judgment granting the motion to quash the indictment.

### A. The INA v. the Texas Human Smuggling Statute

The Immigration and Naturalization Act (INA) provides that a person commits a criminal offense when, in "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, [he] transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law." 8 U.S.C.A. § 1324 (a)(1)(A)(ii). The same section also makes it an offense for a person who in "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation." *Id.* at § (a)(1)(A)(iii).

At the time of Burciaga's arrest and indictment, the Texas Human Smuggling Statute provided in relevant part: "A person commits an offense if the person, with the intent to obtain a pecuniary benefit, knowingly . . . uses a motor vehicle . . . to transport an individual with the intent to . . . conceal the individual from a peace officer[.]"[2] *State v. Flores*, 679 S.W.3d 232, 240 (Tex. App.—San Antonio 2023, pet. ref'd) (citing to the version of Tex. Pen. Code Ann. § 20.05(a)(1)(A) in effect after the 2015 amendment but before the current iteration).

---

[2] The current version of the statute, which was most recently amended in 2023, no longer requires evidence that the defendant had the intent to obtain a pecuniary benefit, instead making it enhancement; the other elements of the offense remain the same. *See* Tex. Pen. Code Ann. § 20.05 (a)(1)(A) ("A person commits an offense if the person knowingly: (1) uses a motor vehicle, aircraft, watercraft, or other means of conveyance to transport an individual with the intent to: (A) conceal the individual from a peace officer or special investigator; or . . . ").

The question is whether Texas Penal Code § 20.05(a)(l)(A) (of the Texas Human Smuggling Statute) is preempted by the INA provisions that criminalize the transportation and concealment of what the INA refers to as "aliens"[3] who are unlawfully in the country.[4]

**B. Burciaga's As-Applied Federal Preemption Challenge**

Burciaga challenges the constitutionality of the Texas Human Smuggling Statute as applied to his case because there is no dispute that the State is applying the statute specifically to prosecute him for transporting and concealing undocumented noncitizens who are allegedly in the U.S. illegally. The majority posits that such a challenge may not be made prior to trial, as it involves "recourse to evidence," and that Burciaga must wait until trial to raise the issue when the State's theory of prosecution will be more clearly elucidated. But I believe current Court of Criminal Appeals' precedent allows this pretrial challenge because Burciaga cannot be prosecuted under a state statute if, as applied, it is preempted by federal law and his right to be free from such a prosecution will be lost if not vindicated prior to trial. The present record allows us to determine whether Burciaga's prosecution is in fact preempted by federal law.

Below, the opinion addresses (1) the undisputed evidence on the record, (2) why we can and should address Burciaga's as-applied challenge at this juncture, (3) the doctrine of federal preemption in the immigration context, and (4) the analysis leading to the conclusion that the

---

[3] Henceforth, when the opinion uses the word "alien," it is only to follow the language of federal law. Otherwise, the opinion uses the term "undocumented noncitizens."

[4] I only analyze Burciaga's as-applied challenge below. I agree that because the Texas Human Smuggling Statute provision has applications outside the scope of immigration law, i.e., it does not penalize only individuals who transport or harbor undocumented noncitizens, it is not *facially* invalid. *See State v. Flores*, 679 S.W.3d 232, 245 (Tex. App.—San Antonio 2023, pet. ref'd) (recognizing that "the legislature also facilitated the prosecution of criminal traffickers who prey upon vulnerable persons—citizens or not—which, as all parties here agree, is a legitimate realm of state criminal law."); *see also McGruder v. State*, 483 S.W.3d 880, 883 (Tex. Crim. App. 2016) (recognizing that to be held facially invalid, the statute would have to be invalid under all circumstances).

portion of the Texas Human Smuggling Statute at issue is at least field-preempted by the INA as applied to Burciaga's case.

**(1) The undisputed evidence on the record**

On the morning of Burciaga's August 9, 2020 arrest, federal Border Patrol agents, Homeland Security Investigations (HSI), Texas Department of Public Safety (DPS) agents, and El Paso Police Department were conducting a joint "surveillance" operation in El Paso near the Mexican border "where numerous smuggling of persons violations have occurred." According to DPS Agent Jesus Adrian Garcia, his supervisor, DPS Captain Gabriel Nava, and El Paso Police Officer Martin Sanchez, the surveillance operation was part of Operation Lone Star (OLS), which was initiated by Texas Governor Abbott as a statewide initiative to curtail undocumented individuals and illegal narcotics from entering the country. Agent Garcia and Captain Nava both testified that the state officers were there solely to enforce state laws and were required to call in either Border Patrol or HSI to check the immigration status of any individuals they suspected were undocumented.

At approximately 6:43 a.m. that morning, an unidentified Border Patrol agent relayed to Agent Garcia that a vehicle had been spotted picking up individuals in the area and was speeding away. Agent Garcia then contacted the El Paso police officers on the surveillance team to direct them to initiate a traffic stop of the vehicle. Shortly thereafter, Officer Sanchez saw the vehicle and pulled it over for speeding. He testified that the vehicle appeared to be a "little lowered" and had very dark-tinted windows. Officer Sanchez identified Burciaga as the driver and observed another individual in the front passenger seat and two in the back seat all sitting "normally" without any coverings over them. Burciaga appeared "nervous," so Officer Sanchez asked Burciaga to step out of the vehicle whereupon he conducted a pat-down search of Burciaga.

4

Next, Agent Garcia arrived on the scene, as did the Border Patrol and HSI agents from the surveillance operation. After the Border Patrol agents confirmed that the three individuals in the vehicle were undocumented noncitizens in the country illegally, the Border Patrol agents took them into custody. Agent Garcia was in charge of detaining Burciaga. He recalled that after reading Burciaga his *Miranda* warnings, Burciaga admitted someone had offered him an undisclosed sum of money to pick up the three individuals, who he knew were undocumented and had crossed the border illegally, and take them to a nearby motel "to avoid detection from law enforcement." Agent Garcia arrested Burciaga for violating the Texas Human Smuggling Statute.

In addition, a supplemental DPS offense report proffered by defense counsel stated that Burciaga's arrest came after he was found to have three "undocumented non-citizens who had entered the United States illegally" in his vehicle and confessed he "knowingly and willingly" picked up the noncitizens to take them to a motel; that he was aware the noncitizens had entered the country illegally; that he was transporting them to avoid detection from law enforcement; and that he did so in exchange for receiving an undisclosed amount of money.

Accordingly, there is no dispute that Burciaga is being prosecuted solely because he was transporting and concealing undocumented noncitizens who were allegedly in the country illegally.

### (2) We can and should address Burciaga's as-applied challenge to the statute

Despite the undisputed evidence that Burciaga is being prosecuted solely for transporting and concealing undocumented noncitizens who were allegedly in the U.S. illegally, the majority opinion concludes that we may not address Burciaga's pretrial claim that his prosecution is preempted by federal law.

5

In support of its position, the majority opinion primarily relies on the Court of Criminal Appeals' holding in *Lykos* for the proposition that an as-applied challenge to a statute "cannot be properly raised by a pretrial motion," and must instead be "brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner." *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (citing *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.4 (Tex. Crim. App. 2006) (noting that because "a contention that a statute is unconstitutional as applied . . . requires a recourse to evidence, it cannot be properly raised by a pretrial motion to quash the charging instrument")). In *Lykos*, however, the defendant—who was charged with capital murder and facing the possibility of the death penalty—filed a pretrial motion seeking to declare the capital murder sentencing scheme unconstitutional as applied to his case; he argued the statutory scheme "creates a constitutionally unacceptable risk of convicting and sentencing an innocent person to death." *Id*. at 906, 910. The Court of Criminal Appeals, however, concluded that such a challenge was premature, as the defendant had neither been convicted of murder nor sentenced to death. *Id.* at 910–911. As the court explained, the issue of whether the death penalty was unconstitutional as applied to the defendant's case was "an entirely hypothetical issue," which the court was not authorized to entertain. *Id.* at 911–12. In other words, the defendant was in effect asking for an "advisory ruling in a case that has not been litigated to any final resolution. *Id*.

Here, in contrast, Burciaga's claim that he is being prosecuted under a state statute that is preempted by federal law is concrete and in the present. It is true that the court in *Lykos* made a sweeping statement to the effect that "there is no basis under Texas law to conduct a pretrial evidentiary hearing to determine the 'as applied' constitutionality of a state penal or criminal

6

procedural statute," and that a "trial judge does not have legal authority to conduct any such pretrial evidentiary hearing and make any such pretrial declaratory judgment." *Id.* at 919. But the high court has since retracted that statement, recognizing that although it had previously "said that as-applied challenges are not cognizable before trial," it has "allow[ed] certain types of claims to be raised by pretrial habeas because the rights underlying those claims would be effectively undermined if not vindicated before trial." *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016).

In *Perry*, the court went on to explain that although it had stated in prior cases "that pretrial resolution is not available when factual development is necessary" to resolve an as-applied constitutional challenge, those cases "did not involve constitutional rights (like double jeopardy) that include a right to avoid trial." *Id.* at 899. In doing so, it expressly cited to its prior holding in *Lykos*, which as set forth above, did not involve a challenge of the type that would allow the defendant to avoid trial. *Id*. at 899 & n. 80.

As the majority opinion points out, the court in *Perry* expressly "recognized" three categories of claims that a defendant could bring prior to trial in the context of an as-applied constitutional challenge—double jeopardy claims, claims involving bail, and claims involving the separation of powers—all three of which involved "a constitutional right that includes the right to avoid trial by litigating the issue before trial." *Id*. at 895–96, 899. But contrary to the majority's opinion, the court in *Perry* did not hold that these three "recognized exceptions" were the *only* ones that could be raised prior to trial. Instead, it recognized that the focal point in determining the cognizability of a pretrial claim is whether the claim involves a constitutional right to avoid a trial. *Id*. at 895–96.

7

I believe that Burciaga's claim is consistent with *Perry*, in that if he proves his State prosecution is barred by the doctrine of federal preemption, he has the right to avoid the trial at hand. For it is well-established that if a state law is preempted by federal law, it is "without effect." *See Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 748 (Tex. 2003) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (holding that under the "constitutional command" of the Supremacy Clause, "all conflicting state provisions [are] without effect")); *see also BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 537 (Tex. 2011) ("A state law that conflicts with federal law is preempted and has no effect."). Accordingly, if the Texas Human Smuggling Statute provision is preempted as applied to Burciaga's case, it is "without effect." It would then follow that the State is without authority to prosecute him under that statute. In other words, if Burciaga is to be prosecuted for this alleged criminal act, it should not be under state law in the state court system. It would therefore be an unnecessary waste of judicial resources to allow the State to go forward with its prosecution only to have Burciaga raise the issue either during or after trial.

With regard to the development of evidence, contrary to its prior position in *Lykos* where it held that a trial court could not hold an evidentiary hearing to resolve an as-applied constitutional challenge prior to trial, the Court of Criminal Appeals in *Perry* expressly recognized that such a hearing was permitted to develop the necessary facts to resolve the defendant's claim; it noted that in other cases, it has "relied upon pretrial factual development to resolve, pretrial, claims that involve a constitutional right that includes a right to avoid trial, like double jeopardy." *Perry*, 483 S.W.3d at 899 (citing *Ex parte Coleman*, 940 S.W.2d 96, 97–98 (Tex. Crim. App. 1996) (considering testimony from prosecutor that the prior case and the pending case involved theft of the same items)).

The court recognized the same principle in *Hill*, pointing out that Article 28.01 of the Texas Code of Criminal Procedure gives a trial court the discretion to hold a pretrial evidentiary hearing to resolve a motion to dismiss or quash an indictment based on a constitutional challenge to the State's prosecution.[5] *State v. Hill*, 499 S.W.3d 853, 867 (Tex. Crim. App. 2016). In *Hill*, the defendant filed a pretrial motion to quash an indictment based on his claim that the State was violating his constitutional rights by vindictively prosecuting him. *Id.* at 855. The trial court held an evidentiary hearing on the issue and granted the motion. *Id.* at 855–63. The State appealed, arguing the trial court lacked the authority to conduct an evidentiary hearing on the issue prior to trial. *Id.* at 866. But the Court of Criminal Appeals disagreed, holding that a trial court has the authority to conduct a pretrial evidentiary hearing "on preliminary matters that can, and should be, resolved expeditiously."[6] *Id.* at 866–67. And, as the court in *Hill* recognized, because the goal of a motion to quash an indictment is to prevent "unnecessary trials," it "would make little sense" to require a defendant "to wait until after a trial is complete before complaining that the trial should never have taken place because the indictment was defective or should have been dismissed or quashed." *Id.* at 867–68 (quoting *Neal v. State*, 150 S.W.3d 169 (Tex. Crim. App. 2004) (en banc)). Here too, I believe it would make little, if any sense, to require Burciaga to wait until after he goes to trial to raise the issue of whether federal preemption bars his prosecution under the Texas Human Smuggling Statute.

---

[5] Article 28.01 provides that a trial court "may set any criminal case for a pre-trial hearing before it is set for trial upon its merits" to determine any matters based on the "[p]leadings of the defendant," any "[s]pecial pleas," and any "[e]xceptions to the form or substance of the indictment or information." Tex. Code Crim. Pro. Ann. art. 28.01, § 1 (2)(3)(4)

[6] We note that our sister court has recognized that to the extent *Lykos* held that a trial court could not hold an evidentiary hearing prior to trial to resolve a motion to quash an indictment, that holding was abrogated *sub silentio* by *Hill. See Enard v. State*, 513 S.W.3d 206, 214, n.6 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Unlike the circumstances in *Flores*, where our sister court refused to consider the pretrial as-applied challenge to the statute, here we have a developed record before us with undisputed facts that Burciaga is being prosecuted under the Texas Human Smuggling Statute solely for his conduct in concealing and transporting undocumented noncitizens who are allegedly in the U.S. illegally, and for no other reason. *See cf State v. Flores*, 679 S.W.3d at 243–44 (refusing to consider a similar as-applied challenge to the Texas Human Smuggling Statute where the record was not fully developed, as the State had declined to present any evidence at the hearing). *Id.* at 244. Absent evidence to determine whether the statute was being unconstitutionally applied to the defendant, the court in *Flores* would not speculate as to the "evidence the State would present at trial to support its allegations." *Id.* at 244; *see generally London v. State*, 490 S.W.3d 503, 507–08 (Tex. Crim. App. 2016) (recognizing that because of the need for a fully developed record, a trial court is "generally" not able to resolve an as-applied challenge to the constitutionality of a statute prior to trial).

In Burciaga's case, however, the State has made it abundantly clear why it is prosecuting Burciaga, offering no alternative theories of prosecution. In its appellate briefing addressing Burciaga's other constitutional challenges, the State again makes it clear that its theory of prosecution is based solely on the allegation that Burciaga was transporting *undocumented noncitizens*. Addressing Burciaga's vagueness challenge, the State argues the statute was not vague as applied to his case because his "captured conduct" in transporting undocumented noncitizens fits squarely within the Texas Human Smuggling Statute's "proscriptions." Similarly, in addressing Burciaga's Fourth Amendment challenge, the State contends the arresting officers had "sufficient probable cause" to arrest Burciaga for violating the Texas Human Smuggling Statute

10

based on his admissions at the scene that he had "knowledge that he was transporting undocumented persons" in his vehicle and that he was being paid to do so.

In sum, because we have an evidentiary record before us that allows us to determine the State's theory of prosecution, i.e., that Burciaga violated the Texas Human Smuggling Statute by concealing and transporting undocumented noncitizens who were allegedly in the country illegally, we are able to and we should at this juncture determine whether the doctrine of federal preemption bars Burciaga's prosecution. Accordingly, I turn to the merits of Burciaga's claim.

### (3) The doctrine of federal preemption in the immigration context

There are three broad categories in which a state law may be preempted by federal law in the immigration context: "(1) if it regulates immigration—i.e., if it is essentially a determination of who should or should not be admitted into the country; (2) if the clear and manifest purpose of Congress was to oust state power in the area of regulation (referred to as field-preemption); or (3) if it is an obstacle to the accomplishment of the purposes of Congress (referred to as conflict-preemption)." *See Flores*, 679 S.W.3d at 243 (citing *DeCanas v. Bica*, 424 U.S. 351, 355 (1976)). I agree with the State that the Texas Human Smuggling Statute provision at issue is not preempted by federal law on the first basis because it does not directly regulate immigration, i.e., it does not determine who should or should not be admitted into the country.

Under the field-preemption doctrine, "States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 567 U.S. at 399. Congress may expressly state its determination to have exclusive authority in a particular field when enacting legislation, or it may do so impliedly when the federal law's "scope indicates that Congress intended federal law or regulations to occupy the field exclusively." *Mills v. Warner Lambert Co.*, 157 S.W.3d 424, 426–27 (Tex. 2005)

11

(citing *Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001)). In other words, Congress's "intent to displace state law altogether can be inferred from a framework of regulation so pervasive . . . that Congress left no room for the States to supplement it or where there is a federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona*, 567 U.S. at 399 (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In determining the extent to which Congress intended to preempt state law, we are "guided by two cornerstones." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Second, we presume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 565; *Arizona*, 567 U.S. at 400 (recognizing same).

Conflict-preemption can occur when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000); *see also Mills*, 157 S.W.3d at 426–27 (recognizing that conflict preemption may occur when a "state law obstructs accomplishing and executing Congress' full purposes and objectives"). What may be considered a "sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373.

As explained below, I conclude that the provision of the Texas Human Smuggling Statute at issue is at least field-preempted as applied to Burciaga's prosecution. Because I conclude that it is field preempted as applied, I do not reach the conflict-preemption analysis.[7]

---

[7] However, some of the same reasoning applies to both field preemption and conflict preemption.

**(4)  The Texas Human Smuggling Statute is at least field-preempted as applied to Burciaga's case**

In determining whether the Texas Human Smuggling Statute is field-preempted, we first look to the broad sweep of the INA and its purposes. The INA is an "extensive and complex" scheme adopted by Congress to regulate immigration and "alien" status. *Arizona*, 567 U.S. at 398. The INA not only regulates who may and may not enter the country, but it regulates the conduct of individuals—regardless of their immigration status—who engage in certain actions with respect to aliens, such as § 1324, which in its current form, is a "comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens."[8] *Georgia Latino All. for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1263 (11th Cir. 2012). The type of conduct Congress has deemed criminal in this regard has expanded over the years, demonstrating Congress's intent to assert its authority over virtually all types of conduct relating to the transportation and harboring of undocumented aliens.

Prior to 1917, the INA only made criminal the "bringing in or landing" of undocumented aliens into the United States, but in 1917, Congress additionally proscribed the harboring and concealing of undocumented aliens. *See United States v. Sanchez-Vargas*, 878 F.2d 1163, 1168 (9th Cir. 1989). And in 1952, Congress extended its reach even further by criminalizing the transportation and movement of aliens who are unlawfully in the country, and making it an offense to encourage or induce the entry of any such aliens. *Id.*[9] Additionally, the INA has made it an

---

[8] In addition to the offenses listed in § 1324, the INA also prohibits third parties from bringing an unlawful alien into the country, from employing an "unauthorized alien," and from importing an alien for an "improper purpose." *See* 8 U.S.C.A. § 1323; 1324a; 1328.

[9] S*ee also* William G. Phelps. Validity, construction, and application of §274(a)(1)(A)(iii) of Immigration and Nationality Act (8 U.S.C.A. §132(a)(1)(A)(iii), making it unlawful to harbor or conceal illegal aliens, 137 A.L.R. Fed. 255 (Originally published in 1997).

offense to either engage in a conspiracy to commit any of the proscribed acts or to aid and abet in their commission.[10]

Section 1324 of the INA not only criminalizes virtually any act relating to the transportation and harboring of aliens, but it also contains a comprehensive penalty scheme providing for differing penalties depending on various factors, such as whether the defendant engaged in the conduct for pecuniary gain and whether bodily harm or death occurred during the commission of the offense, and further provides for the seizure and forfeiture of any vehicle involved in the commission of an offense. 8 U.S.C.A. § 1324 (a)(1)(B)(i–iv), (b)(1). Congress even included a provision calling for the creation of an "outreach program" to educate the public on the penalties "for bringing in and harboring aliens in violation of this section." *Id.* at (e). Significantly, § 1324 contains evidentiary rules governing the prosecution of such crimes. Specifically, § 1324(b)(3) contains a detailed list of the type of evidence that can be considered as "prima facie evidence" in determining whether a violation has occurred, and subsection (d) provides for the admission of videotaped evidence in court proceedings in certain circumstances. *Id.* at (b)(3), (d).

---

[10] It is a criminal offense if a person:

(i) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien; (ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law; (iii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation; (iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or (v)(I) engages in any conspiracy to commit any of the preceding acts, or (II) aids or abets the commission of any of the preceding acts.

8 U.S.C.A. § 1324 (a) (1)(A)(i–v).

While Congress through § 1324(c) permits state and local law enforcement to *arrest* an individual who is violating the INA's criminal provisions, § 1329 provides that causes arising under these provisions are to be *prosecuted* by federal authorities in federal court. *See* 8 U.S.C.A. § 1324 (c); § 1329; *see also Flores*, 679 S.W.3d at 246 (recognizing that although § 1324(c) authorizes local law enforcement to make arrests for violations of immigration law, "the federal courts maintain exclusive jurisdiction to prosecute for these crimes and interpret the boundaries of the federal statute"); *Georgia Latino All.*, 691 F.3d at 1263–64 (recognizing that although section 1324(c) authorizes local law enforcement to make arrests for violations of immigration law, "the federal courts maintain exclusive jurisdiction to prosecute for these crimes and interpret the boundaries of the federal statute" under § 1329). Section 1329 further provides that "[n]o suit or proceeding for a violation of any of the provisions of this subchapter shall be settled, compromised, or discontinued without the consent of the court in which it is pending." 8 U.S.C.A. § 1329. The comprehensive regulations governing the prosecution of cases involving the concealment and transportation of aliens who are illegally in this country say much about the Congress's concern in this field.

In contrast, in *DeCanas v. Bica*, 424 U.S. 351, 360–61 (1976), the U.S. Supreme Court held that because Congress had not yet adopted any regulations governing the hiring of "illegal aliens," the employment of aliens was at best, only a "peripheral concern" of the INA, and that, in turn, Congress had "left room for the State's to regulate in the field." *See Kansas v. Garcia*, 589 U.S. 191, 195 (2020) (explaining its prior ruling in *DeCanas*). However, once Congress enacted provisions in the Immigration Reform and Control Act of 1986 (IRCA) penalizing employers for knowingly employing unauthorized workers and requiring employers to verify prospective employees' employment authorization statuses, the Court recognized that this prohibited the states

15

from regulating the same conduct.[11] *See Arizona*, 567 U.S. at 393–94 (holding that a state ordinance penalizing a violation of the alien registration requirements was preempted by IRCA); *see also Lozano v. City of Hazleton*, 724 F.3d 297, 303, 313 (3d Cir. 2013) (holding that a city ordinance making it unlawful for any business entity to knowingly employ a person without work authorization was both field-preempted and conflict-preempted by IRCA). As the Supreme Court has recognized, by enacting these IRCA provisions, Congress "made combating the employment of illegal aliens in the United States central to '[t]he policy of immigration law.'" *Hoffman Plastic Compounds, Inc. v. N.L.R.B.,* 535 U.S. 137, 147–48 (2002) (quoting *INS v. National Center for Immigrants' Rights, Inc.,* 502 U.S. 183, 194, and n. 8 (1991)).

Similarly, I conclude that by enacting a comprehensive framework for penalizing smuggling undocumented noncitizens in the country illegally, Congress made combating such central to its immigration policies. *See Georgia Latino All. for Human Rights*, 691 F.3d at 1264 (given the comprehensive nature of Congress's regulations "criminalizing the acts undertaken by aliens and those who assist them in coming to, or remaining within, the United States . . . the federal government has clearly expressed more than a 'peripheral concern' with the entry, movement, and residence of aliens within the United States"). In other words, one can reasonably infer from the comprehensive nature of Congress's regulations in this field that Congress intended for the prosecution of individuals found transporting and harboring aliens unlawfully in the country to remain in the hands of federal authorities to ensure the uniform enforcement of its regulations.[12]

---

[11]  IRCA is currently found at 8 U.S.C. § 1324a.

[12]  While I do not reach the question of conflict-preemption, as the United States Supreme Court has recognized, although a state may wish to address illegal immigration problems by enacting laws or policies that supplement the INA—or even appear to be "complementary" to the INA—doing so "undermine[s]" the federal government's ability to regulate in the area and causes the federal government to lose "control over enforcement"; that in turn "detract[s]

To hold otherwise would give state prosecutors "the ability to prosecute those who transport or harbor unauthorized aliens in a manner unaligned with federal immigration enforcement priorities." *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1027 (9th Cir. 2013) ("By allowing state prosecution of the same activities in state court, Arizona has conferred upon its prosecutors the ability to prosecute those who transport or harbor unauthorized aliens in a manner unaligned with federal immigration enforcement priorities."). In effect, this would place the nation's immigration policies—which have traditionally been the exclusive province of the federal government—in the hands of state officials, giving each of the 50 states the ability to intrude into this federally dominated field in virtually any manner they might see fit. *See United States v. South Carolina*, 720 F.3d 518, 531–32 (4th Cir. 2013) (recognizing that a state's enactment of statutes criminalizing the transportation and concealment of noncitizens in the country illegally "create[s] an obstacle to the smooth functioning of federal immigration law, improperly place[s] in the hands of state officials the nation's immigration policy, and strip[s] federal officials of the authority and discretion necessary in managing foreign affairs."); *Valle del Sol Inc.*, 732 F.3d at 1027 (citing

---

from the integrated scheme of regulation created by Congress." *Arizona v. United States*, 567 U.S. 387, 402 (2012) (recognizing that a state statute may still conflict with federal law even though they share the "same goals" or a "common end"); *see also Crosby v. National Foreign Trade Council*, 530 U.S. 363, 379 (2000) (state statute may still conflict with federal law even though they share the "same goals" or a "common end"). Indeed, there are several differences in how a Texas prosecutor may handle a human smuggling case under the Texas statute and how federal prosecutors are required to handle such cases under the INA. For example, under the INA, a federal prosecutor may not settle or compromise a smuggling case without the permission of the court. 8 U.S.C. § 1329. However, the Texas Human Smuggling Statute allows the State's prosecutor to certify in writing that a defendant "has provided significant cooperation to the state or law enforcement," which automatically lowers the range of punishment with no requirement for court approval. Tex. Pen. Code Ann. § 20.05(b–1). In addition, unlike the INA, the Texas statute provides an affirmative defense or allows for a reduction in punishment when the defendant and the individual being smuggled are related, depending on the degree of the parties' relationship. *Id.* at b–2. Finally, we note that the Texas Human Smuggling Statute provides for an entirely different penalty scheme than the INA, which creates a further conflict between the two statutes and constitutes a "further intrusion upon the federal scheme." *See Arizona*, 567 U.S. at 402–03 (state law conflicted with federal law in alien registration where the state law imposed a "framework of sanctions" that differed from the federal law) (citing *Wisconsin Dept. of Industry, Labor and human Relations v. Gould Inc.*, 475 U.S. 282, 286 (1986) ("[C]onflict is imminent whenever two separate remedies are brought to bear on the same activity" (internal quotation marks omitted)); *see also Georgia Latino All. for Human Rights*, 691 F.3d at 1263–67 (holding that a state statute providing different penalties for transporting and concealing noncitizens in the country illegally conflicted with the INA, as it added a layer of "additional penalties atop federal law").

17

*Georgia Latino All. for Human Rights*, 691 F.3d 1266) (recognizing that given the "federal primacy in the field of enforcing prohibitions on the transportation, harboring, and inducement of unlawfully present aliens, the prospect of fifty individual attempts to regulate immigration-related matters cautions against permitting states to intrude into this area of dominant federal concern").

I would therefore join the numerous courts that have held that the INA's comprehensive and carefully crafted regulations criminalizing the transportation and concealment of "illegal aliens" leave no room for the states to regulate in this field, and that state statutes criminalizing the same conduct are therefore, at a minimum, field-preempted by the INA.[13] *See, e.g.*, *Georgia Latino All. for Human* Rights, 691 F.3d at 1263 (holding that a state law creating the offense of "transporting or moving an illegal alien" was preempted by the INA, given the comprehensive nature of its penalty provisions); *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F. 3d 524, 530 (5th Cir. 2013) (holding that a state law criminalizing the harboring of undocumented individuals was preempted by the criminal provisions in the INA); *South Carolina*, 720 F.3d at 530–31 (holding that state laws making it a felony to "transport, move or attempt to transport or conceal, harbor or shelter a person with intent to further that person's unlawful entry

---

[13] The State in its briefing cites one case in which an Arizona appellate court held that a state statute making it an offense for a person to transport an individual that the person has reason to know is not lawfully in the country was not preempted by federal law. *State v. Flores*, 188 P.3d 706 (Ariz. Ct. App. 2008). In that case, the court held that the state statute was not field-preempted by the INA because there was no "specific indication in either the wording or the legislative history of the INA . . . that Congress intended to preclude even harmonious state regulation touching on aliens in general . . . ." *Id.* at 711 (citing *DeCanas v. Bica*, 424 U.S. 351, 358 (1976)). And although that Arizona appellate court recognized that the INA penalizes the same conduct as the state statute, it found that the statute was not conflict-preempted based on the general proposition that "the same act may offend the laws of both the State and the federal government and may be prosecuted and punished by each." *Id.* (citing *Abbate v. United States*, 359 U.S. 187, 194–95 (1959)). The Arizona court's ruling in *Flores*, however, was made without the benefit of the U.S. Supreme Court's more recent ruling in *Arizona*, in which the Supreme Court clarified that (1) Congress's intent to dominate a field can be found not only in its specific provisions but can also be "inferred" when Congress has created a pervasive framework of regulations in a particular area, and (2) when Congress has occupied an entire field, "even complementary state regulation is impermissible." *Arizona v. United States*, 567 U.S. 387, 399, 401 (2012). Because the Arizona court in did not conduct an analysis of whether the INA's comprehensive scheme criminalizing the transportation and concealment of undocumented noncitizens in the U.S. illegally impliedly demonstrated Congress's intent to occupy the field, we do not find it helpful to our analysis.

into the United States or to help that person avoid apprehension or detection" were field-preempted by federal law due to the "vast array of federal laws and regulations" on the same subject, leaving no room for the States to supplement them); *Valle del Sol Inc*, 732 F.3d at 1024 (holding that a state law which attempted to regulate the "transportation and/or harboring of unauthorized aliens" was preempted by the INA, which prohibits "a nearly identical set of activities"); *Fuentes-Espinoza*, 408 P.3d at 452 (holding that a state statute making it a crime for any person who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise" was preempted by the criminal provisions in the INA).[14]

Although the aforementioned cases involve state statutes that directly penalize the transportation and concealment of undocumented aliens who are in the country illegally—and are therefore facially preempted—I find them equally applicable to situations, such as here, where the State seeks to apply a statute to penalize this same conduct. Accordingly, because the undisputed evidence in Burciaga's case demonstrates that the State is attempting to apply the Texas Human Smuggling Statute to prosecute Burciaga for his conduct in transporting and concealing undocumented noncitizens from law enforcement, I would conclude that the statute is preempted by the INA as applied to his prosecution.

## C. Conclusion

---

[14] I also find it significant that although federal courts have held, since as early as 2012, that Congress intended to preempt states from criminalizing the transportation and harboring of aliens unlawfully in the country, Congress has not chosen to react to those holdings by amending the statute to clarify that it had a contrary intent. *See generally Tapia v. Gonzales*, 430 F.3d 997, 1001 (9th Cir. 2005) (recognizing that Congress reacted to Supreme Court's decision's interpreting provisions in the Aliens and Nationality Act by amending its provisions to clarify its intent); *United States v. Schwartz*, 924 F.2d 410, 417 (2d Cir. 1991) (recognizing that Congress reacted to the Supreme Court's decision interpreting a fraud statute by amending it to clarify its meaning).

Concluding that the Texas Human Smuggling Statute is preempted by the INA as applied to Burciaga's prosecution is not meant to suggest that the State cannot assist or cooperate with federal authorities in conducting surveillance operations, such as the one in Burciaga's case, to detect INA violations. To the contrary, the State is free to assist and cooperate with federal authorities, and to arrest individuals suspected of engaging in such violations. But what I believe the states may not do is intrude on the federal government's prosecutorial role as the State is attempting to do here.

Accordingly, I would affirm the trial court's order quashing Burciaga's indictment.

LISA J. SOTO, Justice

August 23, 2024

Before Alley, C.J., Palafox, and Soto, JJ.
Alley, C.J., concurring
Soto, J., dissenting

(Do Not Publish)